PHILIP F. STIFEL *et al.*, Respondents, v. SOUTHERN COOPERAGE COMPANY, Appellant.

St. Louis Court of Appeals, December 17, 1889.

1. **St. Louis, City of :** DELEGATION OF OFFICIAL POWERS. The performance of the duties imposed on the president of the board of public improvements involves the exercise of the highest judgment and discretion, and, there being no express provision of law for the delegation thereof, these duties are personal, and cannot in the absence of such president be executed by a member of the board nominated and acting as president *pro tem.*

2. ———: ——— : SPECIAL TAX BILL. A special tax bill issued under said charter is invalid if signed by such president *pro tem.;* all such special tax bills must be signed by said president.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND DISMISSED.

*W. E. Fisse,* for the appellant.

*D. Castleman Webb,* for the respondents.

BIGGS, J., delivered the opinion of the court.

The plaintiff's action is brought on a special tax bill, which they allege was issued by the city of St. Louis

for certain work done by them in the improvement of Sidney street in said city. The defendant is the owner of certain property on this street, and the amount of the tax bill, as the plaintiffs averred, had been assessed by the municipal authorities against the defendant's property as its proportionate share of the cost of the improvements. The tax bill was for the sum of five hundred and seventy dollars and ninety-nine cents, was dated July 14, 1886, and was signed "J. W. Turner, president of board of public improvements, *pro tem.*" The defendant's property was described in the tax bill as follows, to-wit : " Lot number —— in city block number 748, said ground having an aggregate front of one hundred and fifty feet, by a depth of two hundred and forty feet, bounded north by Southern Cooperage Company, east by First street, south by Sidney street, west by alley."

The defendant's testimony tended to show that the ground included within the boundaries described in the tax bill, and which the plaintiffs were seeking to subject to the payment of the amount of the tax bill, consisted of six separate and distinct city lots, as designated and subdivided in 1836; that since that time the lots were known and described as lots 15, 16, 17, 18, 19 and 20 in block 12, St. George's addition to the city of St. Louis; that each lot was twenty-five feet wide and fronted on First street, and extended west two hundred and forty feet; that lot 15 was situated at the corner of First street and Sidney street, and extended west along the north side of Sidney street a distance of two hundred and forty feet; that the other lots were situated north of lot 15, in the order named, and did not touch Sidney street. It was also in testimony that block 12, St. George's addition, was also known as " city block." number 748. The defendant's evidence also tended to prove that, for several years prior to the date of the tax bill, its lots were assessed separately, and according to the subdivisions herein stated; and that, during the time,

the assessed value of lot 15 was only eight hundred dollars.

The trial of the cause resulted in a verdict and judgment in plaintiffs' favor for the sum of seven hundred and eighty-one dollars and fifty-three cents. From this judgment, the defendant has prosecuted its appeal.

The record presents for our consideration and determination two questions: *First.* The sufficiency of the tax bill. *Second.* The regularity of the assessment.

I. The validity of the tax bill was challenged by the defendant's objection to its admission in evidence, and also by an instruction in the nature of a demurrer to plaintiffs' evidence, which was offered by the defendant's attorney and refused by the court at the close of the plaintiffs' case. This action of the court constitutes the defendant's first assignment of error.

In the opinion of the trial court, the tax bill read in evidence, which was signed by "J. W. Turner, president of the board of public improvements, *pro tem.*," was valid. The plaintiffs supplemented the usual proof in such cases by reading in evidence the record of the proceedings of the board of public improvements, by which it appeared that, at the time when this tax bill was signed, the president of the board of public improvements was absent, and that, by a vote of the board, J. W. Turner, who was one of its members, was selected as its president *pro tem.* The board of public improvements is composed of the following named city officials, viz.: street commissioner, sewer commissioner, water commissioner, harbor and wharf commissioner and the president of the board of public improvements. All of the members of the board are appointed to their respective official positions by the mayor, except the president of the board, who is elected by a vote of the people.

The duties of the president of the board of public improvements, as prescribed and fixed by the charter, are as follows :

"Art. 4, sec. 41. The president of the board of public improvements shall preside at the meetings of the board, and shall have charge of all the public improvements not specially provided for in this article. He shall have a general supervision over the departments of all other commissioners of the board of public improvements, and shall inform the mayor or municipal assembly of any dereliction of duty of any commissioner. He shall authenticate all special tax bills against property-owners chargeable with special taxes for work performed or materials furnished under ordinances of the city, which said bills shall be made out and certified to him by the head of the department under which said work is done or material furnished."

"Art. 6, sec. 24. All special tax bills for work contemplated by this charter shall be made out by the president of said board, and by him registered in his office in full, and certified and delivered to the comptroller, and his receipt taken therefor, and by him registered and countersigned and delivered to the party in whose favor it is issued for collection, and his receipt taken in full of all claims against the city on account of said work."

In order to sustain the trial court in its rulings, it must be held that the duties imposed on the president of the board of public improvements, in reference to tax bills, are merely ministerial, or to be performed by him in a perfunctory manner ; and that no good reason could exist why such duties might not be delegated or conferred on another. *Eyerman v. Payne*, 28 Mo. App. 77. We cannot concur in this view. The charter not only requires the president of the board of public improvements to sign the tax bills, but also made it his duty to apportion the cost of construction between the city and the abutting property-owners ; to determine the extent to which each piece of property is subject to assessment ; and to ascertain the exact amount that

ought to be charged against each separate lot or parcel of land, abutting on the street or alley improved. The proper performance of such duties would certainly require the exercise of judicial judgment and discretion. These duties are very delicate and important, in fact they confer on the president of the board the power of taxation, which is the exercise of the highest sovereign authority. He is elected to office by the people ; the duties thus imposed upon him by the charter are personal ; and for their proper and faithful discharge he is answerable to no one. The right of substitution in the performance of such duties could not exist, unless expressly authorized by the charter. We must therefore rule that the tax bill in this case is invalid, and that the court committed error in allowing it to be read in evidence. This conclusion renders the discussion of the other question unnecessary.

Our conclusion necessarily leads to a reversal of the judgment, and a dismissal of the cause. All the judges concurring, it is so ordered.