ROBERT I. McQUIDDY, Appellant, v. WILLIAM VINEYARD, Respondent.

Kansas City Court of Appeals, January 28, 1895.

1. **Municipal Corporations**: KANSAS CITY CHARTER: STREET IMPROVEMENT: MINISTERIAL ACT. Under the freeholders' charter of Kansas City, the computation and the apportionment of the cost of grading a street is not a mere ministerial act, and can not be performed by the clerk of the engineering department, but is judicial in its nature and can not be delegated.

2. ———: ———: DELEGATION: TAX BILLS. The evidence in this case fails to show that the clerk of the engineering department was ever authorized to compute and apportion the cost of grading the street in question or that his acts were subsequently ratified and the tax bills are *held* void.

3. ———: ———: SPECIAL SESSION: ORDINANCE. The ordinance in question in this case, though passed at a special session of the council of Kansas City, is *held* valid, *following Forry v. Ridge*, 56 Mo. App. 615.

4. ———: ———: GRADING STREET: PETITION. Under the freeholders' charter of Kansas City, no petition is required to bring a street to the established grade and a petition is only called for when it is sought to change an established grade.

McQuiddy v. Vineyard.

*Appeal from the Clay Circuit Court.*—HON. JAMES M. SANDUSKY, Special Judge.

AFFIRMED.

*T. B. Buckner*, with whom is *Karnes, Holmes & Krauthoff*, for appellant.

(1) The execution of this tax bill by Maloney, chief clerk of the board of public works, was shown. This was fully authorized by the charter. City Charter, art. 14, sec. 15. (2) With the preliminary proof of execution and assignment, the tax bill makes out a *prima facie* case. City Charter, art. 14, sec. 18, top of page 90. (3) Defendant contends that the ordinance which authorized the grading was passed at a special session of the council and hence void. We submit that the question has been decided by the court of appeals in the case of *Forry v. Ridge*, 56 Mo. App. 615. This case should be the settled law and binding upon this court. (4) That, if an attempt was made to comply with the charter by filing the ordinance in the circuit court, and having proceedings thereon, there was at least colorable jurisdiction, and the same can not be raised in a suit on a tax bill as a defense. *Ross v. Stackhouse*, 114 Ind. 200; *Warren v. Paving Co.*, 115 Mo. 580, and authorities there cited. *Keith v. Bingham*, 100 Mo. 300. We contend, as before stated, that referring to the ordinance instead of copying it in full, was reciting it in the sense of the charter. As to the meaning of the word "recite" when used in legal documents see Anderson's Law Dictionary, p. 861; Devlin on Deeds, secs. 100, 1002, 1003; *Carver v. Jackson*, 4 Pet. 83; 24 Miss. 228; *Wilhite v. Wilhite*, 53 Mo. 71; *Warner v. Sharp*, 53 Mo. 598. (5) The objection is made that the tax bills were improperly signed; in that John

Maloney signed the name of the president, J. S. Cannon, without sufficient authority. This objection is extremely technical. The charter expressly provides for a delegation of this authority. (See art. 9, sec. 15.) This resolution was passed authorizing him to sign the name of J. S. Cannon, president, to "all tax bills issued by the engineer, except those issued on the installment plan." In construing resolutions, power of attorney, wills, etc., the intention of the framer is the polar star in this construction and that intention must be gathered from the entire instrument and other instruments of which it formes a part, the purpose it was intended to subserve, the general design and scope of it, and in some instances the court will reject words entirely to give the intent effective operation. *Baxter v. Boyer*, 19 Ohio, 490; *Davis v. Boggs*, 20 Ohio, 550; *Smith v. Bell*, 6 Peters, 668; *Reinders v. Koppleman*, 68 Mo. 490; *Russell v. Eubanks*, 84 Mo. 82.

*Stewart, Vories & Buchanan* for respondent.

(1) That the duty required of the Kansas City board of public works are clearly personal in their nature, personal trusts and judicial in their functions, and can not be delegated or substituted, respondent refers to the following Missouri authorities to sustain his contention. *Stefel v. Cooperage Co.*, 38 Mo. App. 340–344; *Eyerman v. Payne*, 28 Mo. App. 77, 78; *St. Jossph v. Wilshire*, 47 Mo. App. 125, 130; *Construction Co. v. Geist*, 37 Mo. App. 509; *State v. Field*, 17 Mo. 529; *Ruggles v. Collier*, 43 Mo. 353; *St. Louis to use v. Clemens*, 43 Mo. 395; *Saxton v. Beach*, 50 Mo. 488; *Lamert v. Tidwell*, 62 Mo. 188; *Kansas City v. Holden*, 107 Mo. 311. When article 9, section 6, of the Kansas City charter, refers to the duties of the board of public works, it means an organized board, sitting and

acting as such, with a president to preside, a clerk to keep the records of its proceedings, and a record kept of its acts, and all acts of its individual members, or duties outside of its records, are illegal and void. *Johnson v. School District*, 67 Mo. 319, 320; *State to use v, Siedmann*, 69 Mo. 515, 518; 26 Mo. 105; 60 Mo. 380. The pretended usage, or custom, of Maloney, to make out tax bill, as he made out these in suit, can not avail appellant. (2) Appellant claims that this power of attorney or resolution should have omitted the words "issued by the city engineer," and that this court should treat them as mere surplusage and meaningless, because under the charter "the city engineer" has no power to issue or sign tax bills, and then claiming that in construing powers of attorney, wills, etc,, the intention of the framer is to govern. 19 Ohio St. 490; 20 Ohio St., 550; 6 Peters, 668; 68 Mo. 490; 82 Mo. 84.

GILL, J.—This an action to enforce certain tax bills, issued in April, 1891, for grading a portion of Locust street in Kansas City. The cause was tried in the circuit court of Clay county, resulting in a finding and judgment for defendant and plaintiff appealed.

Among other defenses urged to defeat these tax bills, we think one is irresistible. It was contended below, and again here, that the tax bills are illegal, because the computation of the cost of the improvement and apportionment thereof against the property charged therewith, was not in conformity with the provisions of the city charter.

The learned circuit judge who, without the aid of a jury, tried the cause, submitted his views in writing. His analysis of the charter provisions and application of the facts found we deem so clear and correct that we

quote and adopt his opinion on this branch of the case:

"The charter of Kansas City provides the following procedure in the issue of tax bills for the grading of a street:

"By section 6, of article 9, on demand of the board of public works, the city assessor causes an assessment to be made of the value of all lands to be charged with the cost of the grading, and delivers such assessment to the board of public works. The board of public works computes the cost of grading and apportions such cost among the several lots or parcels of land to be charged, according to the value thereof fixed by the city assessor, and charges each lot or parcel of land with its proper share of such costs. After this apportionment, the board makes out and certifies the tax bill. By section 15 of the same article, the clerical act of making out and certifying the tax bill may be done by the president of the board of public works, or in his name, by any person or persons by the board of public works specially authorized by resolution in writing and recorded.

"It will be observed that said section 15 authorizes delegation of the power *to make out and certify the tax bill*, but does not authorize any delegation of the power to *compute the cost, to apportion it among the several lots, and to charge each lot with its proper share*.

"The name of the president of the board of public works was signed to the tax bills sued on by John Maloney, the chief clerk in the department of engineering of the board of public works, under the following resolution: 'On motion of Chappell, seconded by Weston, the following resolution was unanimously passed: Resolved, that John Maloney, chief clerk of department of engineering, be, and is hereby authorized and instructed to sign the name of J. Cannon, as

president of the board of public works, to all special tax bills issued by the city engineeer, except tax bills issued on the installment plan, which shall be- signed by the president himself and attested by the secretary, with the seal of the board.

"J. H. CANNON,

"F. B. WRIGHT,                                    President.

"Secretary.'"

"This resolution of the board of public works authorized John Maloney to sign the name of J. Cannon, as president of the board of public works, to all tax bills issued by the city engineer. The resolution does not pretend to authorize John Maloney *to compute the cost of the work, or to apportion it, or to charge the several lots with their share of the costs.*

"As the charter contained no authority for the engineer to issue tax bills, the words "issued by the city engineer" in the resolution seem to be meaningless. The intention of the resolution was that John Maloney should sign the president's name to the tax bills, in cases where the president was authorized to sign the bills, except tax bills issued on the installment plan.

"It appears from the testimony that the assessment of the value of the lots to be charged was made by the city assessor, and deposited with the city engineer, or in his officer John Maloney, as chief clerk in the engineer's department of the board of public works, then computed and apportioned the costs, and charged each lot with its proper share and made out and certified the tax bills sued on, signing the president's name to the tax bills, and delivered them to the assignee of the contractor.

"It appears that the board of public works had no knowledge that the city assessor had made and reported his assessment to the engineer, and had no knowledge

of the cost of the work, nor that Maloney was apportioning the costs and charging the several lots with their proper share. It did not supervise in any manner what was done by Maloney, nor authorize it, otherwise than by the resolution referred to. It did not, after the apportionment and charge was made by Maloney, adopt and ratify what he had done, in any manner whatever, nor authorize a delivery of the tax bill.

"Under this state of facts, were the computation and apportionment of the costs, and the charging of the several lots with their share, the act of the board of public works, by virtue of the fact that this was done by the chief clerk in the department of engineering of the board of public works?

"The procedure culminating in the issue of a tax bill for grading a street, under the charter of Kansas City, is the exercise of the power of taxation. The assessment by the city assessor of the lot benefited corresponds to the assessment by the county assessor of property for the purpose of taxation. The apportionment of the costs of the improvement and the charging of each lot with its share, are the levy of the tax by the board of public works.

"This power of taxation is committed to the board of public works and can be exercised by it alone. A clerk in the engineer's department, or of the board itself, can no more levy this tax, except as the head of the board, acting under its supervision or adoption, than the clerk of the county court can levy a tax independent of the court, and without its direction, supervision or adoption.

"There is no objection to the clerk making the figures, or doing the writing, but at some period in the procedure by which a tax is imposed on a citizen's property, the sanction of the board must be had, whereby it becomes the act of the board.

"The same section (6) which requires the board of public works to apportion the costs and levy the tax for the *grading* of a street, provides that 'when other work other than grading or regrading shall be completed, and it is to be paid for in special tax bills, the board of public works shall cause the city engineer to compute the costs thereof, and apportion the same among the several lots or parcels to be charged therewith, and charge each lot or parcel of land with its proper share of such costs according to the frontage of such land.'

"This section makes a distinction between an apportionment of the costs by the board and an apportionment by the engineer; for grading or regrading a street, the board apportions the cost and levies the tax; for other street improvements, the engineer apportions the cost and levies the tax. The fact that the distinction is made implies that in the matter of apportionment of the cost of certain improvements, the one can not discharge the duties of the other.

"The court is, therefore, of the opinion that the cost of the grading of Locust street, from Twenty-third to Twenty-sixth streets, has not been computed and apportioned, and the several lots charged with their proper share thereof, by the board of public works, as provided by the charter of Kansas City, and for that reason no valid tax bill has been issued. As the levy of a tax by the board of public works to pay for the grading of a street is an act to be done after the completion of the work, and may yet be done, no question of estoppel arises in this case; nor under such circumstances can the practice or custom of the board of public works as to this particular matter be material."

It has been contended with much earnestness in this court that this computation and apportionment of the cost of grading is a *mere* ministerial act and such

as may be performed by the clerk of the engineer's department, and that therefore the act of Maloney in charging these various lots with their proportion of the cost must be upheld. This argument is faulty, and for the good reason that it assumes false premises. In the first place it is assumed that the duties so enjoined by the charter on the board of public works are merely clerical, or ministerial, and such as can be delegated; and, secondly, that these duties were, in this instance, delegated to Maloney.

The duty of computing and apportioning the cost of grading the street is not merely clerical or ministerial; it is judicial in its nature. *Stifel v. Southern Cooperage Co.*, 38 Mo. App. 340. It is true that *data* is furnished for such computation and apportionment, but the charter has reposed the ascertainment of the different amounts to be assessed against each piece of property from this *data*, to the judgment and capacity of the board of public works, and to no one else. To the board, too, is left the determination of the extent or limit of property to be assessed. In section 5, article 9, it is provided that where the land fronting on the street is laid off into lots and blocks, then all the lots back to the center of the block shall be charged; and that where the land so fronting on the street is not laid off into lots and blocks, then such land back 150 feet from the line of the street shall be charged. A determination, then, of the question whether or not the land along the street is platted into lots and blocks, and to what extent, therefore, the assessment should be made, is to a degree left to the judgment of the board of public works. If there is a doubt or question in the minds of the board as to whether certain property is platted into lots and blocks, the common council shall, at the request of the board, settle and determine that doubt. Still the charter leaves it with the board to say

whether or not there *is* a doubt in the matter. This, then, is judicial.

But, even were these duties of computation and apportionment ministerial merely, and such as could be delegated, then the evidence fails utterly to show that Maloney, who performed them, was ever authorized so to do, or that his acts were subsequently ratified.

This apportionment and charging the real estate liable for the grading is a matter of substantial importance. When such apportionment is made out and incorporated in tax bills, they are, under the law, *prima facie* evidence of the facts they recite—they make a presumptive charge against the property. Sec. 18, art. 9, Kansas City Charter. It is not, then, too much to insist that they shall be regularly issued in conformity to the law.

From the foregoing considerations, then, it results that we must affirm the judgment.

We, however, deem it prudent to pass on other questions raised and thereby save future litigation.

(a) Defendant's counsel have, with much ability and energy, contended that all the proceedings for the grading of the street in question are void, because the ordinance providing therefor was passed at a special session of the council, which was not properly convened, under the charter. This exact question was presented to us in *Forry v. Ridge*, 56 Mo. App. 615. We there decided the ordinance valid, under the same circumstances that we have here. The position taken here by defendant's counsel was, in the *Forry case*, presented and argued in a most masterful manner by counsel for defendant Ridge.. Notwithstanding this, after a thorough consideration of the point in all its bearings, we deemed it our duty to support the ordinance. We discover no just reason to depart from

that ruling, and, in addition to what was said in *Forry v. Ridge*, we think it a proper occasion to enforce the maxim of *stare decisis*.

(*b*) The ordinance providing for the grading of Locust street is next assailed, becaused not petitioned for by resident owners of a majority of the front feet on the street. The contention is without merit. The legality of the ordinance in this respect is determined by the charter of 1889; and under it no petition was required to bring a street to the established grade. The petition named in section 1, article 8, is only called for when it is sought by ordinance to change the grade of a street already established. In this instance, the grade had been legally established by ordinance of September, 1888, and before the charter of 1889 was adopted.

We have examined the other objections made, as to the form and sufficiency of the order of notice made by the circuit court in the proceeding to assess damages, and find them untenable. The recital of the ordinance (as made in the order of notice), we think, was a full compliance with the meaning and intent of section 5, article 8, of the charter. It was never intended that this order of summons should contain a *verbatim* copy of the entire ordinance. The order of notice recited the passage of an ordinance by the common council of Kansas City "to grade Locust street from Twenty-third to Twenty-sixth street, being number 1005, approved by the mayor of Kansas City, January 3, 1890," and this was sufficient.

The judgment of the circuit court will be affirmed. Judge ELLISON concurs. Judge SMITH not sitting.