THE DOLLAR SAVINGS BANK, Respondent, v. THOMAS S. RIDGE, Appellant.

Kansas City Court of Appeals, May 6, 1895.

1. **Municipal Corporations:** FREE HOLDER'S CHARTER OF KANSAS CITY: SPECIAL SESSION. The message of the mayor to the common counsel in special session, calling for their action on an ordinance to establish sewer district number 151, is sufficiently explicit to authorize the passage of an ordinance to establish said district and to construct a sewer therein.

2. **Sewer Tax Bill:** DUTY OF BOARD OF PUBLIC WORKS: NON-DELE-GATION OF. Under the freeholder's charter of Kansas city, it is the duty of the board of public works to compute the whole cost of the construction of a district sewer and apportion and charge the same as special tax against the lots in the district, which is a judicial power and can not be delegated to others, and the tax bill issued without such computation and apportionment by the board is void.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED.

*James G. Smart* and *Yeager & Strother* for appellant.

(1) The mayor's message to the common council at the sessions, at which the ordinance providing for the sewer in question was passed, referred to said ordinance merely as "an ordinance to establish sewer district number 151," and said nothing about constructing a sewer in said district. The common counsel therefore had no power to pass said ordinance and it is void. Kansas City Charter (1889), page 25, art. 4, sec. 12; *St. Louis v. Withaus,* 16 Mo. App. 247; s. c., 90 Mo. 648; *Wells v. Railroad,* 110 Mo. 286; *Partridge v. Lucas,* 99 Cal.

519. (2) Under the charter of Kansas City it was the duty of the board of public works to compute the cost of the sewer and apportion such cost among the property to be charged and charge the same upon such property. This duty it could not delegate. The attempted performance of this duty by John Malony, a mere clerk in the city engineer's office, was a nullity and the tax bill sued on is void. Kansas City Charter (1889), page 86, art. 9, sec. 10; *Stifel v. Cooperage Co.*, 38 Mo. App. 340; *McQuiddy v. Vineyard*, 60 Mo. App. 610; *Ruggles v. Collier*, 43 Mo. 353-375; *St. Louis v. Clemens*, 52 Mo. 133; *St. Joseph ex rel. v. Wilshire*, 47 Mo. App. 125; *Johnson v. School District*, 67 Mo. 319.

*J. W. S. Peters* and *H. L. McCune* for respondent.

(1) There can be no question but that the mayor intended by his message to the upper house to direct the attention of that body to the consideration of an ordinance for the construction of a sewer, as well as the establishment of a sewer district. *Sheehan v. Owen*, 82 Mo. 458; *Cole v. Skrainka*, 105 Mo. 309; *Springfield v. Knott*, 49 Mo. App. 612. Surely the failure of the mayor to make his message to the upper house as explicit as it technically should have been, can in nowise affect the substantial rights of the appellants. (2) This court, therefore, held that the duties of the board of public works, in apportioning the cost of grading streets under the city charter, were judicial in their nature and could not be delegated. Nothing is said in this decision to disturb the established rule that duties merely ministerial can be delegated. *Kefferstein v. Know*, 56 Mo. 189; *City of Nevada v. Morris*, 43 Mo. App. 590. The duties of the board of public works in estimating and apportioning the cost of the construc-

tion of district sewers differ materially from their duties in grading cases.

GILL, J.—This is an action on a special tax bill, issued for the construction of a sewer in district number 151, Kansas City. The circuit court gave judgment for the enforcement thereof against defendant's property, and he appealed to this court.

The case is defended on two grounds: *First*, that the ordinance providing for the work is invalid, because not specifically mentioned in the message of the mayor, at the special sessions of the common council wherein it was considered and passed; and, *second*, that the tax bill was illegal and void, because the cost of the work was not computed or apportioned by the board of public works, as provided by the city charter.

I. Section 12, article 4, of the Kansas City charter provides, that "whenever a special session of the common council shall have been called by the mayor, he shall state to each house, in writing, when assembled, the cause or causes for which they have been convened, and their action shall be confined to such cause or causes."

The proper title of the ordinance in question was: "An ordinance to establish sewer district number 151, and to cause a district sewer to be constructed therein." It was introduced into the upper house of the common council of Kansas City, at a special meeting, on June 24, 1890, and, after the first reading, was referred to the proper committee. At a subsequent special session, June 30, 1890, the upper house caused the ordinance to be read the third time and passed it. At a special meeting of the lower house, July 2, 1890, the same ordinance was passed under a suspension of the rules. At each of these meetings in the two houses, the mayor submitted a message calling attention to the matters he

desired the council to consider, designating the ordinance providing for this sewer in these words: "Ordinance to establish sewer district number 151," except at the last meeting of the lower house it was named: "Ordinance to establish sewer district number 151 and district sewer therein." It is contended that the council went beyond the subject-matter recited in the mayor's message—that it was called together to consider an ordinance to establish a sewer district, but transcended the limit and considered and passed an ordinance, not only to *establish* a sewer district, but also to *construct* a sewer therein.

While defendant's counsel have presented, with some force, a technical argument in support of their position, we must yet regard the contention as too strict—too much of a "sticking to the bark," to deserve any serious consideration. The ordinance had already been prepared, providing in its first section for establishing a sewer district, and in the second section directing a sewer to be therein constructed. It was clearly the intent of the mayor that the council should pass on the merits of this entire ordinance—not only to mark out and establish the district, but as well to authorize the construction of a sewer. It ought not to be expected that the mayor should, with *great accuracy* and *in hæc verba*, designate the title of the ordinance. It is sufficient if the "cause or causes" of convening the council are so stated by the mayor as will leave no reasonable doubt as to what was intended for the council's consideration. And if the action of that body is within the limit thus prescribed, there can be no valid objection to its legality, under the terms of the charter, as quoted in the beginning of this paragraph.

II.  Concerning the legality of the ordinance providing for the construction of the sewer, we come now to the attack made on the tax bills, because the board

of public works did not compute the cost of the sewer and apportion it as a charge on the property in the sewer district, but left this duty to be performed by other parties, not thereto authorized by the city charter.

Under the Kansas City charter, the board of public works is made to consist of four persons—the president of the upper house of the common council, who shall be *ex officio* president of the board, and three other persons, freeholders and electors of said city—who shall be appointed by the mayor and confirmed by said upper house. And, as its name implies, this board is intrusted with the powers and duties of directing, in a large degree, the conduct of the city's public improvements, among others, to adopt a sewer system for the entire city, and to supervise the construction of said sewers, and it is made the duty of the board to meet as often as once a week to transact said business. Article 6, city charter. All ordinances for the construction of district sewers must have the consent and indorsement of said board of public works. Section 10, art. 9, and sec. 37, art. 17, city charter. Said section 10, of article 9 (which relates to district sewers) concludes as follows: "As soon as the work of constructing * * any district sewer shall have been completed, under a contract let for the purpose, the board of public works shall compute the whole cost thereof, and apportion and charge the same as a special tax against the lots of land in the district, exclusive of the improvements, and in the proportion that their respective areas bear to the area of the whole district, exclusive of the streets, avenues, alleys and public highways, and shall * * make out and certify in favor of the contractor * * a special tax bill for the amount of the special tax against each lot in the district." Section 15, article 9, provides that the president of the board of public works shall make out and sign the tax bills, or that they may be made out

and signed in his name by any person thereunto specially authorized by a resolution of the board in writing and recorded on the books kept by such board.

It will be thus seen that the people of Kansas City have, by their organic law, reposed large discretion and personal confidence in this body of four persons, called the board of public works. As to district sewers, they, in effect, direct of what landed property the sewer district shall consist; they decide when, if at all, a sewer shall be constructed; and then, *when the work of construction* is completed, according to the contract let for that purpose, this board is intrusted with the further important duty of levying a special tax and charging each respective piece of property with its share of the cost. The testimony here shows that in relation to the district sewer in question the board of public works did nothing more than merely assent in advance to the ordinance, when proposed. The board did not compute the cost or apportion the same among the different pieces of property chargeable therewith. Said board exercised no supervision or control over the matter, after the passage of the ordinance. The entire business was transacted by different employees in the engineer's department, and that, too, without any prior authorization from the board, and without its subsequent ratification. It is true that Maloney, chief clerk in the engineer's department, had general authority, by resolution of the board, to perform the mere clerical act of signing the name of the board's president to the tax bills, but the resolution did not attempt to authorize him to compute the cost of the sewer and apportion and charge the same to the different lots of land in the district.

We have here, then, the precise question lately presented in *McQuiddy v. Vineyard*, 60 Mo. App. 610; and we may well remark here, as there, that a computation

and apportionment made by these clerks in the engineer's department (and that, too, without any express declaration from the board) can not, in any sense, be deemed the act or acts of the board of public works. "This power of taxation is committed to the board of public works and can be exercised by it alone.   A clerk in the engineer's department, or of the board itself, can no more levy this tax, except as the hand of the board, acting under its supervision or adoption, than the clerk of the county court can levy a tax independent of the court and without its direction, supervision or adoption. There is no objection to the clerk's making the figures or doing the writing; but at some period in the procedure by which a tax is imposed on a citizen's property, the sanction of the board must be had, whereby it becomes the act of the board.''

It is useless to determine whether or not the city ordinance introduced in evidence did in terms authorize the city engineer's department to compute and apportion the cost of the sewer.   If such an ordinance existed, it would be invalid, since it would be obviously in conflict with the terms of the charter.   By the express direction of that instrument, the duties referred to were reposed in the board of public works; and it is not in the power of the council, by ordinance, to subvert or amend the city's organic law, which stands as its constitution, and which can only be amended by the same power that created it.

The purpose of the charter in thus reposing these duties on the board of public works is as manifest as it is wise.   The protection of the owner from corrupt, unjust charges against his property was the purpose. Rather than retain the power in the hands of the engineer's department (where it rested before the adoption of the new charter and where it was, at times, abused) it was thought best to interpose the supervision and

control of this non-partisan body, the board of public works. Under the supervision of a careless or corrupt employee of the engineer's office, inferior work might have been done, or the work falsely passed as completed according to contract. So the board of public works was created, and in it was vested the responsible duties before mentioned. The board then was placed in a position to exact faithful compliance on the part of the contractor; to see that a correct computation of the amount due is made; and that a fair and impartial apportionment is had among the lots of land chargeable with its payment.

It serves no useful purpose to discuss the proposition, whether or not these duties of the board are merely ministerial, and such as can be delegated to others. It is sufficient for the case in hand to say, that there was not in this matter any delegation of powers. These computations and apportionments were not delegated to the parties who performed them. Such acts were performed without even the color of authority emanating from the board, unless the mere *silence* of that body shall be deemed an authority, which, we take it, no one will contend for. It must, moreover, be admitted that in so far, at least, as the board of public works was intrusted with the supervision of computing, apportioning and levying of these special taxes, their duties were more than mechanical or ministerial, but were in the highest sense discretionary or judicial.

In our opinion, then, the ordinance providing for the sewer was legally passed, but the tax bill in suit is void, because the cost of the work was not computed, or the apportionment thereof made, as the charter provides.

The judgment of the circuit court will, therefore, be reversed. All concur.