| 68 | 483 |
|----|-----|
| 70 | 550 |
| 68 | 483 |
| 95 | ²161 |
| 100 | 302 |

THE CITY OF TRENTON *ex rel.* G. W. GARDNER, Respondent, v. LUTHER COLLIER, Appellant.

### Kansas City Court of Appeals, January 11, 1897.

1. **Municipal Corporations:** THIRD CLASS CITIES: STREET IMPROVEMENTS: ORDINANCE: TAX BILLS.  Under the charter of cities of the third class there should be an ordinance declaring the character, extent, and the materials of which the improvements should be made prior to the letting and the ordinance authorizing the contract, otherwise the tax bills would be void.  On rehearing, this ruling is reversed following *Springfield v. Weaver*, 37 S. W. Rep. 509.

2. ———: ———: ———: EXTENT OF WORK.  Where the ordinance constituting the contract between the city and the contractor for a street improvement reduces materially the extent of the improvement and the work to be done, as compared with the preliminary resolution and notice therefor, the contract is vitiated, and the tax bills issued thereon void.  *Springfield v. Weaver, supra,* distinguished.

3: ———: ———: ———: PUBLICATION. Where a resolution providing for street improvement is published in a daily newspaper for two consecutive weeks, as from June 1 to June 15, this is sufficient even though there intervened Mondays when there were no issues of such paper and in fact there were only thirteen insertions.

4. ———: ———: ———: ASSESSMENTS. On the record in this case it is *held*, that the assessments against the particular lots for the cost of the improvement were made by the council and not by the city engineer, though the engineer performed the computation and apportionment.

5. ———: ———: ———: ESTIMATES: ADVERTISING. The fact that the estimates are figured by the square yard and the advertisement for bids for letting the contract was on the same basis, constitutes no defense to a tax bill for street improvements.

6. ———: ———: ———: OTHER IMPROVEMENTS. The fact that a tax bill for street improvement includes the costs for other improvements also, constitutes no defense.

*Appeal from the Trenton Circuit Court.*—HON. P. C. STEPP, Judge.

REVERSED AND REMANDED,

*A. H. Burkeholder* and *Geo. Hall & Son* for appellant.

(1)  The tax bill and ordinances authorizing the same are void for the reason the resolution declaring said work necessary was not published for two weeks, as required by law.  Laws 1893, sec. 110, p. 92; *Leonard v. Sparks,* 63 Mo. App. 585; *Leavitt v. Eastman,* 77 Me. 177. (2) The tax bill is void on its face.  It recites that the levy and assessment, as well as the apportionment of the costs of the improvement, were made by the city engineer instead of the city council, as required by law.  Laws of 1893, secs. 108 and 110; *Bank v. Ridge,* 62 Mo. App. 324; *McQuiddy v. Vineyard,* 60 Mo. App. 610; *Stifel v. Cooperage Co.,* 38 Mo. App. 340; *Ruggles v. Collier,* 43 Mo. 353; *St. Louis v. Clements,* 43 Mo. 395. (3) The law required that the

cost of paving and macadamizing the street should be levied as a special assessment upon all lots and pieces of ground upon either side of such street abutting thereon along the distance improved in proportion to the front foot. And before the city council could make any contract for the paving, the city engineer was required to make an estimate of the costs thereof. The estimate of the costs, the advertising for bids, the letting of the contract, and first levy were made in proportion to the square yard, instead of the front foot, as required by law. The whole proceedings were therefore illegal and void. Laws of 1893, sec. 108, pars. 5 and 8; Elliott on Roads and Streets, 383, 420, 429, 430. (4) The contract does not conform to the plans and specifications, nor to the notice advertising for bids, and is therefore illegal. *Galbreath v. Newton*, 30 Mo. App. 380; (opinion, pages 391, 394); Elliott on Roads and Streets, 426; *People v. Brand*, 43 N. Y. 227. (5) The tax bill is void on its face, because it includes the paving in front of the lot and the intersections of the streets in one and the same tax bill, and charges the two separate assessments in gross. Section 109, Acts of 1893, page 92, authorizes the bringing of the street to grade to be included in the same bill with the cost of paving, but there is no such provision as to street intersections. The tax bill is void for the reason that the contract let was not the contract for which bids were advertised. *Galbreath v. Newton*, 30 Mo. App. 380; *People v. Brand*, 43 N. Y. 227.

*O. M. Shanklin* and *J. S. Parker* with *Harber & Knight* for respondent.

(1) The tax bill in suit was a culmination of successive acts done by the council of the city of Trenton, in the work of paving and macadamizing said College

avenue.   The question here presented as to whether said tax bill was a legal and valid tax bill and its issue a proper exercise of the taxing power of said council will be settled by an examination of the various steps taken by the council of said city leading up to and resulting in the issue of said tax bill, and if the action of said council in passing the resolution to pave and enacting the various ordinances and making of record the various orders in proof was a substantial compliance with the law, then the tax bill here sued on is legal and valid and should be upheld.  *Cole v. Skrainka,* 105 Mo. 303;  *Sheehan v. Owens,* 82 Mo. 558;  *City of St. Joseph v. Anthony,* 30 Mo. 542.   It is a well established principle of law that a variance in order to be fatal must be such as would materially affect the substantial right of the property holder.   *Cole v. Skrainka,* 105 Mo. 309;  *City of St. Joseph v. Anthony,* 30 Mo. 542.

GILL, J.—This is a suit to enforce certain special tax bills for paving a portion of College avenue in the city of Trenton.   The tax bills are attacked for various alleged failures by the city authorities to follow the statute relating to such improvements when done by cities of the third class, to which Trenton belongs.   The trial court held adversely to the defendant on the several objections, decided the tax bills a valid charge, and from a judgment enforcing the same, defendant has appealed.

The proceedings were begun on May 29, 1894, when the city council by resolution declared its opinion that
STATEMENT.   it was necessary that " all that part of College avenue between Water street and the bridge on said College avenue over the tracks of the Chicago, Rock Island & Pacific Railroad in said city be paved and macadamized " at the expense of the abutting real estate, etc.   It was further ordered that such

resolution be published for two consecutive weeks. Next in order appears a resolution of the city council, June 25, 1894, wherein, after reciting that the above resolution had been published as required by law, and that no remonstrances of property owners had been filed, the city engineer was ordered to make an estimate of the cost of so paving "all of that part of College avenue from Water street to the bridge on the Rock Island railway track," and that after the grading had been done by "certain parties heretofore agreed," then "the contract for the paving and macadamizing said portion of said street be let." On July 5 thereafter the city engineer filed a report of his estimate for doing the work, describing that portion of the street to be paved as including all of College avenue from Water street to the bridge over the Rock Island tracks.

On July 24, the city council, by resolution, directed the city clerk to give notice, by seven days' publication in a newspaper, that sealed bids for doing the work would be received until August 1, 1894, at 6 o'clock P. M.; and such notice was given describing the work, as previously, for the paving "all that portion of College avenue from the intersection of said avenue with Water street to the bridge thereon over the tracks of the Chicago, Rock Island & Pacific Railroad Company." This notice was given. And on August 1 the proceedings of the city council show that on motion the bid of plaintiff Gardner was accepted and the work let to him, the city counsellor being directed to prepare bond, contract, etc.

This contract was submitted in the shape of an ordinance, which the council passed, and the mayor approved August 6, 1894. By its terms G. W. Gardner was awarded the contract for paving "all that portion of College avenue between the intersection of said avenue with Water street and the bridge on said avenue

over the tracks of the Chicago, Rock Island and Pacific Railroad Company, *exclusive* of sidewalks of legally established widths *and the space legally required to be macadamized by the Trenton Street Railway Company, operating a street railway on said part of College avenue.*" And by the terms of this contract ordinance, the city also agreed to furnish the contractor free of charge a four-ton roller with which the crushed stones were to be packed.

Gardner seems to have finished the work before October 3, 1894, and on that day the council by ordinance accepted the same and ordered the issue of tax bills.

.For the purposes of this opinion these are all the facts that need be stated.

I.  As already stated, Trenton is a city of the third class, and in making these street improvements is governed by the late amended charter for such cities. Laws 1893, page 65. Under this statute, section 108, the city council is authorized, by *ordinance*, to provide for paving its streets at the expense of the abutting lot owners.

Section 110 of the same statute reads:  " When the council shall deem it necessary to pave, macadamize, gutter, curb, or otherwise improve any street, avenue, alley, or other highway, or any part thereof, within the limits of the city, for which a special tax is to be levied, as herein provided, the council shall, by resolution, declare such work or improvement necessary to be done, and cause such a resolution to be published in some newspaper published in the city, for two consecutive weeks, and if a majority of the resident owners of the property liable to taxation therefor shall not, within ten days thereafter, file with the clerk of the city their protest against such improvements, then the council shall have power to cause such improvements to be made and to contract therefor, and to levy the tax as herein provided. * * *

Such contracts shall be let to the lowest and best bidder, upon plans and specifications filed therefor by the city engineer or other proper officer, with the city clerk, not less than one week's advertisement for bids thereon being made in some newspaper published in the city. * * * " It is also further provided that before the council shall make any contract for paving any street " an estimate of the cost thereof shall be made by the city engineer or other proper officer and submitted to the council, and no contract shall be entered into for any such work or improvement for a price exceeding such estimate."

The first question presented here is whether or not this work of paving College avenue was properly provided for by an *ordinance* passed by the Trenton city council. Before the macadamizing was done, the record shows that but one ordinance on the subject ever passed the city council, and that was on August 6, which was in terms a mere *contract* between Gardner and the city—a contract entered into between the parties in pursuance of a *resolution* adopted August 1, awarding the contract to Gardner, and directing the city counselor to prepare a contract. Up to this time the city council had, it seems, deemed an ordinance unnecessary, and had proceeded only by the adoption of oral motions or resolutions. A resolution was all that the law required to advise property owners of what the council deemed necessary in relation to the street improvement. And it would seem the logical order of things to get from the city engineer his estimate of cost of the proposed improvement, even before the council should, in the solemn form of an ordinance, declare that the paving should be done. But before *advertising for bids*, it seems that the council should pass an ordinance, approved by the mayor, directing

MUNICIPAL corporations: third class cities: street improvements: ordinance: tax bills.

the street to be paved, and how, and what material
should be used.  For, otherwise, what would there be
to give assurance to contractors and bidders that the
city intended to have the street improved?  The city's
intention in that respect could only be manifested by
an *ordinance*, duly passed by the city council and ap-
proved by the mayor.  And up to the time that bids
were advertised for, and the contract by resolution
awarded to Gardner, no ordinance had been passed.
The prior necessity for the passage of an ordinance
before the work was advertised and bids therefor invi-
ted, becomes apparent, when it is remembered that the
council must declare what the character and extent of
the improvement shall be, what materials shall be used,
and how the work shall be done.  The law has placed
a decision of these matters in the judgment and discre-
tion of the council, and it can not be delegated or left
to the city engineer or other parties.  In my opinion,
then, these tax bills are void because of the absence of
a proper and timely ordinance commanding the im-
provement and prescribing its nature and extent.

II.    But there is another and even more serious
objection to the enforcement of these tax bills.  Con-
ceding now the formality and legality of the proceed-
ings antedating Gardner's contract, and
we observe that the city authorities pro-
posed a street improvement of a certain extent, and
then let to this contractor a work quite different.  Be-
ginning with the resolution in May, where the council
declared the necessity for the street paving, and includ-
ing notice to property owners, order to engineer to
make estimate of the cost and report of engineer
thereon, together with his plans and specifications, as
well as the advertisement of the council for bids for
doing the work—in all these, without exception, the
work proposed was to pave the entire space occupied

by College avenue from Water street to the point where said College avenue crosses the Rock Island tracks. Bids were taken for the work thus described, and yet when a contract is entered into between the city and Gardner, he is, in express terms, relieved from paving a large and substantial portion of the street between the points mentioned. The contract made with him does not provide for paving the entire width of the street—as had all the time been proposed, which property owners were advised was the intention, and which other bidders had been induced to believe—but said contract was entered into so as to exclude that portion of the street used by a street railway operated on College avenue. This departure was of itself sufficient to invalidate the tax bills. *Galbreath v. Newton*, 30 Mo. App. 380; *The People v. Board of Improvement*, 43 N. Y. 227.

It was the duty of the city authorities first to determine upon definite plans and specifications for the work proposed, and then advertise for bids thereon, so that those who may desire may understandingly make bids for its performance. Not only is this just to the parties who bid, but it insures the benefits of competition and takes away the opportunity for corrupt practice by city officials and scheming contractors. If other bidders on the work in question had known that only that portion of the street outside the street car tracks was to be paved, then it may be that a less price would have been offered. And further, had the property owners known that only a portion of the street was to be paved, a majority might have objected and defeated the proposed improvement.

Other questions are argued in briefs of counsel, but in view of our opinion on the foregoing, it becomes unnecessary to discuss them.

The judgment will be reversed. All concur. ELLISON, J., as to second paragraph only.

, ON MOTION FOR REHEARING.

GILL, J.—In plaintiff's motion for rehearing our attention is called for the first time to a late decision of the supreme court, *City of Springfield to use of Central National Bank v. Weaver*, 37 S. W. Rep. 509. And in accordance with our duty, we now modify the foregoing opinion so as to conform to the views expressed in that case.

_First._  In the first paragraph of the opinion heretofore rendered by us, we declared it necessary for the mayor and council to adopt an ordinance directing the street improvement and how and of what material, etc., it should be done, *before giving notice for bids therefor.*  But we are now advised by division one of the supreme court, that "the enactment of an ordinance would be sufficient if made at *any time before work on the improvement was commenced.*"  So, then, we must hold that the tax bills involved in this suit are not void for the reasons set out in paragraph 1 of our former opinion.

SPRINGFIELD case followed.

*Second.*  But plaintiff's counsel are wrong in the assertion that we are in conflict with the *Springfield* case decided by the supreme court, when, as in the second division of our opinion, we held the tax bills void because the contract, as let to Gardner, did not, in the extent of work to be done, conform to the preliminary resolution and notice.  The cases are parallel except as to one important fact.  In the *Springfield* case, *supra*, a general ordinance was introduced in evidence, and was before the court at the trial, wherein it was provided, that "in case the street should be occupied by a railway track, the corporation owning the railway is required to pave between the rails and two feet outside."  And, in addition, the ordinance granting the

SPRINGFIELD case distinguished.

franchise to the street car company was in evidence, and this, too, imposed the duty on the company to pave between its tracks and two feet on the outside thereof. In view of this, the learned judge writing the opinion, used this language:

"Reading the resolution in connection with these ordinances, there can be no reasonable doubt that the improvement contemplated by the resolution only included that part of the street on each side of the railway track, and was not intended to include the part occupied by it. It must be held, therefore, that the resolution imparted notice to defendants, and others interested, of the extent of the improvement." See second paragraph of supreme court opinion in case before cited.

In the case at bar no such ordinances were before the court. There was nothing to show that any such duty of paving was imposed on the street railway line at Trenton. It is, of course, well settled that the courts will not take judicial notice of city ordinances; they must be proved as other facts. Plaintiff's counsel in their argument on motion for rehearing have volunteered the statement that such ordinances do exist in the city of Trenton, and have, indeed, assumed to quote the same. But we must confine ourselves to the *record* before us 'and can not allow counsel to add thereto in this irregular manner. But in view of the claim made that such ordinances do exist, we think it just to modify our mandate and remand the cause for another trial so that such ordinances may be shown.

*Third.* In view of another trial, it may be well to say that we see no merit in other objections to the tax bills raised by defendant in his brief. As to the publication of the preliminary resolution the charter provides, that the council should "cause such a resolution to be pub-

lished in some newspaper published in the city, for two consecutive weeks." The council directed the said resolution to be "published in the Trenton *Morning Tribune*, a daily newspaper in the city of Trenton, for two consecutive weeks from the first day of June, 1894," and the proof shows that such resolution was so published for two weeks—June 1 to June 15, both inclusive. This was a publication for two weeks, even though during the time there intervened Mondays on which there was no issue of the paper, and though for that reason there were only thirteen insertions.

*Fourth.* Neither is there any force in the contention that the city engineer, in place of the city council, assumed to levy the assessments on the particular lots chargeable with the costs of the improvement. It is true that the tax bills recite that the engineer "computed the cost and apportioned the same among the several lots," etc., still the ordinance of January 7, 1895, specifically charged each lot with its proportionate share and these tax bills were issued in the exact form then and there prescribed by said ordinance. While the city engineer probably performed the labor of computation and apportionment, yet the council, by ordinance, ratified and approved the same and specifically directed the amount to be charged against each piece of property. This was a sufficient compliance with the law. *McQuiddy v. Vineyard*, 60 Mo. App. 610–616.

*Fifth.* That the city engineer, in his preliminary estimate, figured the probable cost of the macadamizing at so much per square yard; and that the advertising for bids and letting the contract was on the same basis, is of no consequence. There could be no objection to all this, if when the apportionment and assessments were made the different parcels of property were respectively

charged according to the front foot. And this was done under the ordinance of January 7, 1895, in pursuance of which these tax bills were issued.

The objections as to the manner of apportioning the cost of work on the street intersections, or rather

—: —: —:
other improve-
ments.

as to. including the costs thereof in the same tax bills with the other work, are entirely without merit. For reasons already stated the opinion heretofore rendered will be modified, as above indicated; the judgment will be reversed and cause remanded, and the motion for rehearing overruled. All concur.