THE PEOPLE OF THE STATE OF NEW YORK on the relation of THE REAM PAVEMENT COMPANY, Appellant, v. THE BOARD OF IMPROVEMENT OF UNION STREET, Respondent.

A contracting board, authorized by law to contract for the pavement, etc., of streets according to such plan as they may adopt, and, after ten days' notice in the city newspapers, to let the work to the parties who shall offer to do the same at the lowest prices, have no power, after publication of a notice requiring the work to be done in accordance with a plan adapted only to the Belgian pavement, to award such contract, with specifications (which have not been adopted by said board), and which relate only to paving such streets with the Nicolson pavement.

It is the duty of the board first to adopt plans and specifications of the work required to be done, so that those desiring to contract therefor can understandingly make offers for its performance.

This is true, although the different pavements are patented, and there can be no competition between different parties in respect to any one of them.

(Cause submitted December 14, 1870; decided December 20, 1870.)

Appeal from an order of the General Term of the second judicial district, affirming an order of the Special Term, Kings county, denying a mandamus to compel the respondents to award a contract to the relators to pave Union street, Brooklyn.

By chapter 826 of the Laws of 1866 (page 1849), commissioners were to be appointed to widen and improve Union street in the city of Brooklyn.

The powers of the commissioners are found in section three (3) of the act, as follows:

"Section 3. The said board of improvement is hereby authorized to cause said street to be graded and paved, or graveled, or macadamized, and completed and improved according to such plan as they may adopt.   *   *   *   Said work shall be let upon ten days' notice, to be published in the corporation newspapers of said city, to the parties who shall offer to do the same at the lowest prices, in accordance with the plans and specifications of the said board of improvement, and who shall furnish security for the performance of their contracts which shall be satisfactory to said board."

The board adopted a plan for paving the street with Belgian pavement, but no specifications of the work to be done under this plan were adopted. Specifications of the work which would have to be done in order to pave the street with Nicolson pavement were drawn up by the engineer of the board, but were never adopted by it.

After this, a notice was published that sealed proposals would be received for regulating and paving Union street, etc., with Belgian, improved Belgian, Nicolson and other improved pavements, according to plans and specifications, which might be seen at the office of the engineer.

The relator filed his plan and specifications, for paving Union street with the Ream pavement, with the respondents at the office of their engineer in the city of Brooklyn, and submitted proposals for paving the street, with the usual security for the performance of the contract.

On the 3d day of November, 1869, the respondents, by a resolution and notice in writing addressed to the secretary of the relator, awarded the contract to the Ream Pavement Company, but afterward, being advised that their act in so doing was illegal, rescinded their action and refused to execute the contract.

The pavements of both the Ream Pavement Company and the Nicolson Pavement Company are patented, and are not subject to competition among contractors.

An application was made by the relators, at a Special Term of the Supreme Court in Kings county, for a mandamus to compel the board of commissioners to execute the contract awarded to the relators, which application was denied, and the relators appealed to the General Term, when an order was made affirming the decision of the Special Term, and from the order an appeal was taken to this court.

*Pultz and Elmore*, for the appellants, cited *People* v. *Cook* (8 N. Y., 67); *Commissioners* v. *Cassidy* (7 Abb., Pr. R., 183); *People* v. *Allen* (6 Wend., 486); *Waller* v. *Harris* (20 id., 255, 262); *People* v. *Draper* (15 N. Y., 532).

*D. P. Barnard*, for the respondents: *Van Rensselaer* v. *Sheriff of Albany* (1 Cow., 501); *People* v. *President, etc., of Brooklyn* (13 Wend., 130); *People* v. *Canal Board* (13 Barb., 432); *People* v. *Smith* (12 Abb., Pr. R., 133).

GROVER, J.—The motion of the relator for a writ of mandamus was properly denied. So far from the relator having an absolute right to a contract for paving Union street in Brooklyn, the respondents were not authorized to enter into it with the relator. By the third section of the act for the widening and improving that street (Laws of 1866, 1867), the board of improvement thereby created were authorized to cause said street to be graded and paved, or graveled or macadamized, and completed and improved according to such plan as they might adopt and with such grades as had

been or should be established by the common council, and to enter into the necessary contracts therefor; and further provides that said work shall be let upon ten days' notice, to be published in the corporation newspapers of said city, to the parties who shall offer to do the same at the lowest prices in accordance with the plans and specifications of the said board of improvement, and who shall furnish security for the performance of their contracts which shall be satisfactory to said board. This section contains the only authority conferred upon the board to enter into any contract for work. In contracting, the board must pursue the course pointed out by the statute, and cannot legally contract in any other way. This course is clearly pointed out. The board must first adopt plans and specifications of the work required to be done so that those desiring to contract therefor can understandingly make offers for its performance. In this way only can the advantages of competition be secured to the public. The board did adopt a plan, but that was for paving the street with Belgian pavement, but made no specifications of the work in accordance with this plan. Specifications of the work required to pave the street with Nicolson pavement were made, but no resolution was adopted for paving the street with that kind of pavement. Having done this, the board caused to be published in the papers specified in the act a notice to contractors: That sealed proposals would be received at, etc., until 4 P. M. Tuesday, October 26, 1869, for regulating and paving Union street, from Gowanus canal to the Plaza line Prospect park, with Belgian, improved Belgian, Nicolson, and other improved pavements, according to plan and specifications, which might be seen at the office of the engineer. What followed might reasonably have been expected, and perhaps was what was intended by the board. Ten propositions were received, no two of which was for the same kind of pavement. It was impossible for the board upon a canvass of these offers to determine therefrom which was the lowest. This could only be determined by considering which kind of pavement proposed for was the most

desirable and durable, and advantageous for use, and to what extent superior to the others, and then comparing these with the like qualities of the other kinds, in connection with the cost of each, and from this determining which offer was really most advantageous as a whole for the public. The act contemplated the performance of no such duty by the board. It designed to open no such way for the exercise of favoritism. It designed that the work should be competed for as to price by contractors, and that this should be done in such a way that the lowest bidder could be determined by calculation without any exercise of judgment as to the relative advantages of different kinds of pavement. It is said by the counsel for the relator that there was a patent upon the kind of pavement it proposed for, owned by it, and that some other kinds are also patented, and that the kinds patented can compete in no other way than in the mode attempted in the present case. This may be true, but it by no means follows that this mode is permitted by the act in question. That clearly does not permit it. The board clearly had no power to award any contract upon offers received under such a notice as was published in the present case. Order appealed from must be affirmed with costs.

All the judges concurring.

Order affirmed.