TRADERS' BANK, Appellant, v. M. J. PAYNE, Respondent.

Kansas City Court of Appeals, June 13, 1888.

1. CONTRACT—PLEADINGS UPON—LAW GOVERNING—CASE ADJUDGED. The action here is founded in contract, and not on a *quantum meruit.* The petition sets out that the work was authorized by an ordinance of Kansas City, and that Comstock & Halsey were the contractors thereunder and did the work and received the tax bills therefor from the city engineer, and plaintiff holds the bills by assignment. The action is subject to the legal incidents of one founded on a special contract, except in so far as the city charter may otherwise permit. And where the petition counts on the contract (as in this case), no recovery can be had on a *quantum meruit.*

2. ——— CHARTER OF KANSAS CITY—CONSTRUCTION OF SECTION FOUR, ARTICLE EIGHT, THEREOF — CASE ADJUDGED.—The *proviso* in section four, of article eight, of the charter of Kansas City, to the effect " that nothing in this section shall be so construed as to prevent any defendant from pleading in reduction of the bill any mistake or error in the amount thereof, or that the work therein mentioned was not done in a good and workmanlike manner," is a reservation, a beneficial provision, for the protection of the taxpayer, who may or may not interpose such defence. But he may plead the general issue, or its equivalent, going to the very foundation of the plaintiff's cause of action, and designed wholly to defeat it, and in such event the case would stand on the contract, and not on a *quantum meruit.* The special defence pleaded here does not come within the terms or meaning of this *proviso.*

3. ———— ———— CASE ADJUDGED.—The court, upon consideration of
the ordinance contract, and upon review of the evidence as to the
character of the work done under it, is of opinion that the con-
tract in this case was not substantially complied with ; and that
the instructions given by the court properly presented the real
issue to the jury, and that the verdict is sustained by the evidence.
(*Creamer v. Bates*, 49 Mo. 554, *distinguished*).

APPEAL from Jackson Circuit Court, HON. JAMES
H. SLOVER, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover on several tax bills
issued by the engineer of the City of Kansas to Com-
stock & Halsey, as contractors, for the paving of Broad-
way, a street on said city, from Third street south to the
city limits. The plaintiff sues as assignee under Com-
stock & Halsey.

The special defence alleges that defendant "did not
substantially or at all comply with · said contract with
the city for the doing of said work in this, that by the
terms of said contract the concrete under the blocks was
to be of the depth or thickness of nine inches, but
defendant says that said concrete foundation, as laid by
said contractors under their said contract, was laid only
to the thickness or depth of six inches."

On the admission that the tax bills made out a *prima-
facie*-case for the plaintiff, it objected to the introduc-
tion of any evidence by defendant in support of the
special defence. This was overruled.

The ordinance authorizing the improvement, and the
·contract under which Comstock & Halsey did the work,
were read in evidence by defendant. So much of this
contract as is pertinent to this controversy is as fol-
lows :

## "SUB-GRADE AND FOUNDATIONS.

"The surface of the roadway within the limits above specified to be excavated to sub-grade, which will be seventeen inches below, and parallel to the established grade and finished surface and cross-section of the street, as shown on plans or above indicated.

"On this sub-grade will be placed a layer of hydraulic cement concrete not less than nine (9) inches thick, formed as hereinafter provided, and a layer one inch thick of clean Kaw river sand spread thereon, and wetted down with sprinkling hose.

"In any case where the excavation may be made below said sub-grade, no back filling of clay will be allowed, but the extra depth must be made with concrete which will not be measured or paid for.

## "CONCRETE.

"Concrete to be composed of five parts, by measure, of broken stone to two parts, by measure, of sand to one part, by measure, of hydraulic cement.

"The stone to be of hard ledge limestone, broken to pass at their greatest dimensions through a ring of two and one-half inches in diameter. They shall be screened, if necessary in the opinion of the city engineer, to secure the stones being free from fine parcels of dirt or stone, and shall be thoroughly washed with hose, and wetted before being used.

"Cement to be fresh ground, to be tested and accepted by the city engineer before being used in the work. Condemned cement to be immediately removed from the work. Cement will be required to stand a tensil strain of thirty-five pounds per square inch twenty-four hours after mixing. Contractor to provide dry storage for cement, and any barrels damaged to be thrown out.

"The concrete to be mixed in suitable wooden boxes

of such size as the city engineer may direct. The concrete shall be formed by first thoroughly mixing the sand and cement dry in proper proportions; water to be then added in sufficient quantity only to give the mortar a proper consistency. The stones (which are to be wet) and the mortar, to be then thoroughly and rapidly mixed together in the box with shovels, and the mass turned over until every stone is completely covered with mortar.

"The concrete to be then quickly carried to its proper place, either on shovels or in wheelbarrows, boxes, or other suitable manner, and deposited in mass without scattering. In no case will it be thrown off shovels. Concrete in place to be rammed until mortar flushes to surface. No concrete to be used after it has begun to set.

"The finished surface of the concrete to conform as near as may be practicable to a line parallel to, and eight (8) inches below the true finished grade and cross-station of the street, and any guideboards which the city engineer may direct shall be furnished by the contractor, and used for this purpose.

"The edges of each fresh section of concrete to be stepped back at least two feet to furnish a bond with the next section.

"Care to be taken not to disturb the concrete until it is thoroughly set, and any precautions which the city engineer may deem necessary to prevent damage or injury shall be taken by the contractor at his own expense. No concrete shall be laid when the temperature is below 35 F. After the concrete has, in the opinion of the city engineer, become sufficiently set, and not until that time, the contractor shall begin laying the blocks thereon. Concrete to extend close up to, and around all openings, projections, or irregularities in such manner as the city engineer may direct for the purpose of securing close contact, and preventing water getting underneath.

"The surface of the concrete to be kept wet by hose if required, until covered with full depth of sand."

The defendant's evidence showed clearly that the concrete foundation on this street did not average over six and three-fourths inches, and in no place examined did it exceed seven inches, and running as low as six inches. This examination extended from Third street north to the limits of the city, covering some eighteen blocks or more. The evidence, however, did not show that this examination was made between Eighth and Ninth streets, and there was some doubt as to whether it was made between Seventh and Eighth streets. But over the rest of the street the examination was made at intervals, on either side, of thirty-five to fifty feet by digging down to the bottom of the concrete and measuring to the top.

The contractors were not introduced as witnesses by the plaintiff.

The plaintiff introduced as a witness the city engineer, who testified that cement would shrink more or less after being laid, depending somewhat upon the moisture of the ground and other conditions; but his testimony failed to explain the discrepancy of three inches or more of such shrinkage. In rebuttal defendant's expert testimony tended to contradict this theory of the engineer. Plaintiff also sought to show that the work done in this instance was good, and the pavement was as good as any in the city.

On this state of the proofs the defendant asked and the court gave the following declaration of law:

"If the jury believe from the evidence, that the average depth or thickness of the concrete under the pavement, for the construction of which the tax bills sued on were issued, was not substantially nine inches as required by the contract, then such tax bills, and each of them, are void, and the jury cannot find for the plaintiff in any sum whatever, but must find for the defendant on all the counts of the petition."

The plaintiff asked the following instructions

"1.  Upon the pleadings and the testimony the jury will find the issues for the plaintiff on each count for the amount claimed, with fifteen per cent. interest per annum from the dates of the tax bills."

"2.  The court instructs the jury that, although they may believe from the testimony that all the details of the contract, upon the completion of which the tax bills were issued, were not carried out, yet, if they further believe from the testimony that the variance from the contract was not material nor substantial, and that the pavement actually laid, and for which said bills were issued, was as durable as if all the details on the contract had been strictly complied with, then they will find for the plaintiff on each count for the amount of the tax bill therein described, with fifteen per cent. per annum interest from the date of the tax bill."

"3.  If the jury believe from the evidence that the contract upon which the tax bills in suit are founded, was substantially complied with, then their finding will be for the plaintiff upon each count therein claimed with fifteen per cent. per annum interest from the date ·of the tax bill."

The court refused the first and second, and gave the third.

Verdict and judgment for defendant.  Plaintiff appealed.

JOHNSON & LUCAS, for the appellant.

I.  The answer of defendant is framed to avoid the provisions of article eight, section four, of the charter of Kansas City.  Laws of Mo., 1875, p. 252.  But defendant, not having tendered or pleaded any tender of the value of the work done, provided by said section, is not entitled to make the defence.  There is no question in this case of the completion of the work, as in *Meyer v. Wright*, 19 Mo. App. 283, and no testimony to support the special defence was admissible.

II.  (a)  It was not shown that there was less than ·nine inches of concrete in front of defendant's lots; and the tax bills were *prima-facie* evidence of the furnishing

of the material doing the work, and of the liability of the property therefor. Bad work at other places on the street does not constitute a defence for this defendant. *Creamer v. Bates*, 49 Mo. 523; *Eyerman v. Zeppenfield*, 6 Mo. App. 581. (*b*) As a further bar to the maintenance of this defence, section four of the charter (Acts 1875, p. 252) provides that "no suit on any bill shall be defeated or affected by any irregularity affecting only other bills, or matter rendering any other bill invalid, in whole or in part." In the case of *Meyer v. Wright*, *supra*, there was a failure to complete the work in front of the defendant's property.

III. (*a*) The instruction given for the defendant was erroneous. What had the "average depth" of the concrete to do with the liability of defendant's lots? A total absence of concrete, under pavement a mile away, might defeat the bills under this instruction, and yet defendant's lots would get the full benefit of the improvement. This is not the law. *Miller v. Anheuser*, 2 Mo. App. 168. The case of *St. Louis v. Clemens*, was one where there was a failure to do any work for a long distance upon the street. It has no application to a case of failure to carry out certain details. (*b*) There was not only no testimony tending to show that the fact that there was not "substantially nine inches" of concrete laid under the pavement, materially violated the contract, or made the improvement less valuable, but there was testimony that it was as durable as if it had had precisely nine inches of concrete under it. (*c*) The failure to comply fully with one specification in a contract, cannot be held to avoid the entire contract as a matter of law, and yet that is what the jury were told.

IV. The second instruction asked by defendant declared the law correctly, and should have been given. Any other theory would permit property-holders to get all the substantial benefits of the improvement contracted for without paying therefor, which is repugnant to both law and justice.

GAGE, LADD & SMALL, for the respondent.

I. There was no error in refusing the plaintiff's instruction complained of, because the court gave its instruction which was substantially the same thing, except that it was more favorable for the plaintiff than the one refused.

II. The instruction given for defendant was unobjectionable. There being no dispute about the provisions of the contract, it was for the court to determine what provisions were material and must be substantially complied with to entitle the plaintiff to a verdict. That these provisions, as to the concrete foundation, were material, in fact the most material provisions, is beyond dispute. If, therefore, they were not substantially complied with, the tax bills were void. *Meyer v. Wright*, 19 Mo. App. 283. The above case expressly decides that "the contractor, or his assignee, cannot maintain an action on a tax bill until he has complied, at least substantially, with his contract"; and "that the contractor, for grading or paving, has no special privilege conferred upon him by the provisions of the charter of Kansas City," cited by appellant in this case and also by appellant in that case, "not common to contractors in any other work, except that the tax bill issued in his favor, makes for him a *prima-facie* case, *i. e.*, he may recover, unless it be shown affirmatively by the defendant, that he has no right under the fundamental law of contract." And "that defendant has a right to show that he is not 'worthy of his hire.'" To this might be added that the defendant has also a right to show that the contractor violated the eighth commandment, which the evidence undoubtedly showed he did in this case.

III. It was not necessary for the defendant to show the precise location of his lots on the street, or that the foundation of the pavement was specially defective immediately in front of them. The evidence and the theory of the instructions given went to the character

of the foundation under the whole mile and three-quarters of pavement, and it ought to be enough to defeat any tax bill, that there was a shortage of about one-third in the principal portion of the whole of it. This was the same as if nine inches of concrete had been put down under two-thirds of the pavement and none at all under one-third of it. The contract in this respect must have been substantially, at least, performed before there could be any recovery at all. It is true that a defendant cannot show, in order simply to get a reduction of his tax bill, that there was defective work in front of other lots, but he can show defective work in front of other lots if such defects are so extensive as to render the whole contract substantially incomplete ; in which event the tax bills are void without reference to any special defect in the work immediately in front of defendant's property. Otherwise a defendant might be required to pay for a pavement which was not laid at all on any other part of the street, except in front of his own lot, although the contract called for a pavement one and three-quarter miles in length, as in this case. *Meyer v. Wright, supra.*

Philips, P. J.—The result of this opinion may perhaps be more logically apparent by stating that the action herein is founded in contract, and not on a *quantum meruit.* The petition sets out that the work was authorized by a certain ordinance of the City of Kansas, and that Comstock & Halsey were the contractors thereunder, who did the work, and received the tax bills therefor from the city engineer. But for the fact that the charter of the city makes such a tax bill *prima-facie* evidence of the regularity of every essential precedent act, it would have devolved upon the plaintiff, in developing its case, to prove such antecedent matters, such as the existence of the requisite ordinance, the making of the contract conformably thereto, and the performance of the contract on the part of the contractors. The fact, however, that the charter makes the

tax bill *prima-facie* evidence of such performance, does not alter the character of the action, as one founded on contract expressed.

The action, then, is subject to the legal incidents of one founded on a special contract, except in so far as the charter may otherwise permit. *Meyer v. Wright*, 19 Mo. App. 283, 287. It is the well-settled rule of law that where the petition counts on the contract no recovery can be had on a *quantum meruit. Eyerman v. Cemetery Ass'n*, 61 Mo. 498; *Lewis v. Slack*, 27 Mo. App. 119. Nothing short, therefore, of a substantial compliance with the contract in question would authorize a recovery by plaintiff in this action.

Appellant's counsel contends, however, that under the charter it is permissible to recover as on a *quantum meruit*, and that defendant's counsel by the form of their answer have ingeniously sought to evade the spirit of the charter exception. Reliance for this contention is placed upon the following provision contained in section four, article eight, of the amended charter of the city : "Such certified bill ( tax bill ) shall, in any action thereon, be *prima-facie* evidence of the validity of the bill, of the doing of the work, and of the furnishing of the material charged for, and of the liability of the property to the charge stated in the bill: *Provided*, that nothing in this section shall be so construed as to prevent any defendant from pleading in reduction of the bill, any mistake or error in the amount thereof, or that the work therein mentioned was not done in a good and workmanlike manner."

It is first to be observed that this *proviso* is a reservation—a beneficial provision—for the protection of the defendant taxpayer. The defendant may or may not interpose such defence. If the defendant should plead the general issue, or its equivalent, going to the very foundation of the plaintiff's cause of action, designed to wholly defeat it, the case would stand on the contract, and not on a *quantum meruit*.

The special defence pleaded by the defendant here

comes not within the terms of the language of the *proviso*, "that the *work* therein mentioned was not done in a good and workmanlike manner." This clearly has reference only to the manner of doing the work. It does not touch the instance of a failure to employ the material, in kind and quantity, called for in the contract, or agreed upon or acquiesced in by the parties concerned. But it pertains solely to bad workmanship in employing the material and putting it into the construction. It applies to the lack of skill or negligence in doing the mechanical work; and not to the case of a failure, as claimed by respondent, to complete the work as called for in the plans and specifications. The defect complained of here goes to the very substance of the contract. The contract required nine inches of concrete as a *substratum* for the blocks, whereas the contractor only employed six and three-quarters of concrete. No question is made but that the workmanship in putting in the concrete, as far as it went, was good enough; but it was not the concrete foundation called for by the legislative body of the city, and that prescribed in the contract. It is the same as if A should contract with B to put in a foundation for a house, of stone, two feet wide, and three feet below the surface of the ground, and B should put in one, one foot wide and one foot deep. There could be no recovery on the contract by B. In the judgment of the municipal legislature a pavement laid on nine inches of concrete was essential to permanency, and to meet the wants of the public and those whose property was to be burdened with paying for it. It is, therefore, not too much to say, in my opinion, that this contract was not substantially complied with, as the jury found. The instructions given by the court properly presented the real issue.

The further question raised by the appellant is, that the evidence failed to show that the pavement in front of defendant's property was properly constructed. It is true that the evidence does not affirmatively show

that the concrete in front of defendant's lots was not up
to the requirements of the contract.  But it does show
that an examination made of about eight-ninths of the
street developed the fact that the concrete fell short
three inches and more of what the contract called for.
The only points not so examined on the line on the
street were between Eighth and Ninth streets, and pos-
sibly between Seventh and Eighth.   There is nothing in
the record before us to show that defendant's property
lay between these particular blocks.   For aught we know
it may be directly opposite to the portion of the street
examined and tested by the witnesses.  If in fact the
defendant's property lay opposite to that portion of the
street not examined, it was a matter easily proved by
plaintiff.   The plaintiff presented no such question
directly in any instruction asked by it.   If the question
of fact was raised at all, it was in the instruction in the
nature of a demurrer to the evidence.

Therefore, as the matter now stands, the question
is, conceding the pavement throughout Broadway,
extending from Third to the most southerly street of the
city, say over eighteen blocks, to be defective, as
claimed by the witnesses, would the fact that there was
no direct evidence as to the condition of one or two
blocks on the line authorize the court to take the case
away from the jury?  It would not be an unreasonable
inference for the jury to make, that as the whole work
was done by the same contractors, about the same time,
and under the same contract, that eight-ninths of it was
bad from being done in a particular manner, the remain-
ing one-ninth was done in the same way.   Such an
inference must be allowable, otherwise the defendant's
proof might have to go to the extent of showing that every
square yard of the work, from Third to Twentieth street,
was excavated and measured.   The rule of "the known
and experienced connection subsisting between collateral
facts or circumstances, satisfactorily proved, and the
fact in controversy" (1 Greenl. Evid. 17) very aptly
applies to such a state of case.   The court could not

properly take such question of fact from the jury under the state of proofs before them. This, in connection with the further fact, that the assessment made on defendant's property, under the scheme of the charter, is apportioned according to his frontage to the whole cost of the work done along the whole line of the improvement, justified the action of the court in overruling the demurrer to the evidence.

It was for a completed improvement of the street that defendant's property was taxable, under the scheme of the ordinance. This is unlike the case of *Creamer v. Bates*, 49 Mo. 554, where the property-owner was specially damaged by reason of the manner of doing the work in front of his property. But it is that of a street not completed according to the ordinance and the contract, in which case there can be no recovery against one abutting property-owner until the street is completed throughout. *City to use v. Clemence*, 49 Mo. 554.

It follows that the judgment of the circuit court is affirmed. All concur.