ROBERT I. McQUIDDY, Respondent, v. MARY M. BRANNOCK, Appellant.

**Kansas City Court of Appeals, May 3, 1897.**

1. **Tax Bills:** ORDINANCES: TIME OF PLEADING: CONTRACT. An ordinance prescribed that certain street improvements should be completed within eighty days of the taking effect of the contract. The work was not completed until about six months after said time. *Held,* tax bills are void.

2. ———: CONTRACT: LIMITED POWERS OF MUNICIPALITIES. While a municipal corporation is in a substantial sense the agent of the property owner it can not dispense with a substantial performance of contracts for public improvements, and all persons contracting with a corporation as well as its own officers are bound to ascertain the nature and extent of its corporate authority.

McQuiddy v. Brannock.

3. ——: ——: ——: TIME ESSENTIAL. The time within which a contract for making a public improvement is to be completed is an essential element of the contract on the ground of justice to competing bidders and protection to property owners and can not be set aside by the contractor and the city's officers.

4. ——: COMPLETION OF CONTRACT: INJUNCTION AGAINST. The fact that a contractor may have been prevented by an injunction from completing an improvement within the contract time will not excuse him where he has not contracted against such contingency.

5. ——: ——: LIABILITY. Bad weather, unless contracted against, will not excuse the delay to complete a public improvement within the contract time.

6. ——: GENERAL V. SPECIAL ORDINANCE: DELEGATION OF AUTHORITY: CONTRACT. A special ordinance required a certain street improvement to be completed within eighty days from the taking effect of the contract. A general ordinance relating to such improvements made the city engineer umpire between the parties and gave him power to extend the time for performing the contract in certain contingencies. Held, the general ordinance was a delegation by the council of a power conferred on it and, therefore, void, as well as a contract providing for such extension of time.

7. ——: CONTRACTS: STREET IMPROVEMENT: PUBLIC LETTING: TIME. Public lettings of public works are required on the ground of public policy to avoid corruption and favoritism and encourage competition. All competitors are therefore entitled to an equal basis and time is a material element for the consideration of bidders and it can not without injustice be lengthened after the contract is let.

8. ——: ——: RATIFICATION. A contract for a street improvement which is void by reason of an extension of the time beyond that allowed by the ordinance can not be ratified by the city council and thereby legalized.

9. ——: ——: ——: CHANGING TIME. The general and special ordinances hereinbefore referred to, can not be so construed as to permit an officer to extend the time for the completion of the contract without delegating legislative authority to the engineer.

10. ——: ——: QUANTUM MERUIT: KANSAS CITY FREEHOLDERS' CHARTER. A provision of the freeholders' charter of Kansas City providing for a recovery of the actual value of the work done, where it did not comply with the contract, can not be applied to a street improvement done under a void contract, nor will such provision apply to the work done under a valid contract which was wholly ignored in the performance of the work.

11. ——: ——: ——: ——: TIME.   Said provision of the charter
will not warrant a recovery in *quantum meruit* where the contract,
though in strict compliance with the ordinance, makes time the
essence of the contract and the performance is not within the con-
tract time.

*Appeal from the Jackson Circuit Court.*—HON. C. L.
DOBSON, Judge.

REVERSED.

*Geo. A. Neal* and *A. S. Marley* for appellant.

The alleged contract with Patrick Lyons was ap-
proved by the mayor and common council of Kansas
City on the twenty-first day of July, 1890, and in sec-
tion 2, ordinance 1005 offered in evidence (the ordi-
nance authorizing the contract), it is provided: "The
work shall be completed within eighty (80) days from
the time a contract therefor binds and takes effect.
The time of beginning and rate of progress and time
of completion being essential conditions of this con-
tract." The work was not completed until April 23,
1891, which was nearly six months later than the ordi-
nance and stipulations provided; the time for the com-
pletion of the work under the contract expired October
9, 1890. *Rose v. Trestrail*, 62 Mo. App. 352; *French
v. Wallace*, 13 Wall. 506; *Beater v. Coal Co.*, 56 Mo.
App. 221; *Brinkenhoff v. Elliott*, 43 Mo. App. 186;
*Fulkerson v. Eads*, 19 Mo. App. 620. It must appear
that there has been a fair compliance with all the con-
ditions precedent, whether prescribed by charter or
ordinance to entitle a city or contractor to recover from
the abutting property holder the expenses of paving a
street or other local assessment. *Cole v. Skrainka*, 105
Mo. 303; *Bank v. Payne*, 31 Mo. App. 512; *Meyers v.
Wright*, 19 Mo. App. 283; *Turney v. Dougherty*, 53
Cal. 619; *Beverage v. Livingston*, 54 Cal. 57; Dillon on

Municipal Corporations [3 Ed.], sec. 810; *Cheeney v. Inhabitants of Town of Brookfield*, 60 Mo. 53; *Verden v. City of St. Louis*, 131 Mo. *loc. cit.* 98; *Keating v. City of Kansas*, 84 Mo. 416.

*T. B. Buckner* and *J. V. C. Karnes* for respondent.

(1) Appellant's second contention is that the tax bills are void because the work was not done within the time named in the contract. The very section of the contract which provided within what time the work should be done also provided the penalty for the failure to complete it within the time, and how the deduction should be computed. It would seem that the contract itself is a complete answer to the contention of appellant. The case of *Rose v. Trestrail*, 62 Mo. App. 352, cited by appellant, bears not the slightest analogy to the case at bar. In that case no effort was made by the contractor to commence the work until the time for the completion of the work had expired some sixty days previous. The court held that an injunction would lie to prevent the doing of the work, no effort whatever having been made to perform the contract during its life. Then, too, no such provisions were in this contract as the latter part of section 7 and section 12 found in the contract in this case. (2) Courts are beginning to look with disfavor on technical defenses in cases of this kind and character by parties who know of such improvements and interpose no objection, not even a protest. The most recent decisions of this state and those of other states cited by our courts approvingly fully support this position and we would invite their careful examination. *Shehan v. Owen*, 82 Mo. 464; *Ross v. Stackhouse*, 114 Ind. 200; *Cole v. Skrainka*, 105 Mo. 309; *Morse v. City of Westport*, 110 Mo. 502; *Johnson v. Duer*, 115 Mo. 381; *Gibson v.*

McQuiddy v. Brannock.

*Owen,* 115 Mo. 269; *Warren v. Pav. Co.,* 115 Mo. 580; Herman on Estoppel, sec. 1221; *Pav. Co. v. Edgerton,* 125 Ind. 455; *Clements v. Lee,* 114 Ind. 399; *Pretzinger v. Harness,* 114 Ind. 498.

ELLISON, J.—This is an action on tax bills issued for street grading in Kansas City. The bills were issued in lieu of those declared to be void by this court in an opinion found in 60 Mo. App. 610. The ordinance directing the grading, and under which the contract was let and the bills issued, provided:

STATEMENT.

"The work shall be completed within eighty days from the time a contract therefor binds and takes effect, and shall be paid for in special tax bills against and upon the lands that may be charged with the cost thereof according to law." The contract became binding on July 21, and the work thereunder was not begun until about thirty days thereafter. The work was not completed until the next April following, being about six months after the time specified by the ordinance. It was, however, received by the city authorities and the original tax bills aforesaid issued therefor.

This was not a substantial compliance with the ordinance, and under the authority of *Rose v. Trestrail,* 62 Mo. App. 352, we must hold the bills to be void, unless they are rendered valid by the following considerations:

TAX bills: ordinances: time of pleading contract.

2. It appears that the contract made with the contractor in pursuance of the ordinance aforesaid contained the following provisions: "The work embraced in this contract shall be begun within ten (10) days after this contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter (unless the engineer shall specially direct otherwise in writing) with such force as to

CONTRACT.

secure its full completion within eighty days thereafter; the time of beginning, rate of progress, and time of completion being essential conditions of this contract. And if the contractor shall fail to complete the work within the time above specified, an amount equal to the sum of ten (10) dollars per day for each and every day thereafter until such completion, shall be deducted, as liquidated damages for such breach of this contract, from the amount of the final estimate of said work.''

"To prevent all disputes and litigations it is further agreed by the parties hereto that the city engineer shall in all cases determine the amount and quantity of the several kinds of work which are to be paid for under this contract, and he shall decide all questions which may arise relative to the execution of this contract, on the part of the contractor, and his estimates and decisions shall be final and conclusive.''

It is urged that these provisions distinguish this case from *Rose v. Trestrail, supra.* It is argued that the provision agreeing upon a forfeiture of $10 for each day of failure to complete the work within the time is an implied concession that the work might not be completed within the time and yet the contract remain binding. In our opinion, this provision of the contract can not be applied to any substantial departure from the contract as to time. Whether it could find application to some slight failure as to time we need not say, since here, as before stated, the work was not finished for six months after the time limited. The following extracts from Mr. Dillon's work on Municipal Corporations have been so frequently applied by the courts of this state to proceedings of the present nature that we need do no more than quote them:

"Sec. 810. The property owners are not parties nor privies to contracts for improvements, yet to a cer-

tain extent and in a substantial sense the municipality is their agent; and since the burden to pay rests upon them they have a right to insist upon a faithful performance of the contract and the corporate authorities can not dispense with such performance."

"Sec. 447. And it is a general and fundamental principle of law that *all* persons contracting with a municipal corporation must at *their peril inquire into the power* of the corporation or its officers to make the contract, and the contract beyond the scope of the corporate power is void, * * * So also those *dealing with the agent of a municipal corporation* are likewise bound to ascertain the nature and extent of his authority. This is so in all cases where this authority is special and of record or conferred by statute." See, also, *Cheeney v. Brookfield*, 60 Mo. 53; *Verden v. St. Louis*, 131 Mo. *loc. cit.* 98; *Keating v. Kansas*, 84 Mo. 416.

A contract for the performance of such work as is usually contemplated in grading the streets of a city presenting the topography that Kansas City presents is frequently much more onerous when it must be completed in a short time than when the time is extended indefinitely, or over a long period. It is a matter of the first importance to bidders on municipal public work that they should know the time in which work shall be done, whether it must be done during a busy season, or when work is scarce and labor is cheap; or, whether they will be given opportunity to sell or dispose of rock and other material taken from excavations, etc. If the bidder understands that his time is not limited he can very well bid much lower for work than he could if the same work had to be performed in a limited time. So that if an ordinance requiring work to be completed in a short, specified time is to be altered by a contract which annuls the provision as to time, it results

unfairly for other bidders and for the property owners. Competition is an important safeguard to the property owner in the matter of street improvement. *Galbreath v. Newton*, 30 Mo. App. 392–394. The contract in the case before us, if interpreted as plaintiff contends, would be no more the contract contemplated by the ordinance than if it had prescribed a substantially different width or depth of grade. Again, it is a fair and natural inference that the city council, in directing street improvement, has in view the desire of the property-owning citizens. Indeed these improvements are generally ordered by the council at the instigation of such citizens. It may well be that any given improvement would not be desired unless it can be done in a specified way, or of certain material, *or within a certain time.* Sometimes such improvements are set on foot preparatory to some great exhibition or other like purpose. If the contractor and the city's agent for letting the work may set aside the wish of the citizen (who has perhaps only favored the work because of such purpose) and the direction of the only body having authority to order the improvement, all protection to the property owner is removed and the whole theory of the law as heretofore understood and administered would be overturned. The judgment will be reversed. GILL, J., concurs. SMITH, P. J., not sitting.

ON MOTION FOR REHEARING.

ELLISON, J.—We have been asked to grant a rehearing in this cause for several reasons:

1. First, that it was shown in evidence that the delay beyond the time specified in the contract was caused by two injunctions, one in August of short duration, and the other from the last days of January until April.

In our opinion the fact that a contractor is

enjoined will not excuse performance as stipulated. It is a contingency which should have been provided against in the contract and not having been so provided in the contract in question, can not be allowed. The general rule is quoted from Chitty's Contracts, 1074 in *Anderson v. May*, 50 Minn. 280: "Where the contract is to do a thing which is possible in itself, or where it is conditioned on any event which happens, the promisor will be liable for a breach thereof, notwithstanding it was beyond his power to perform it; for it was his own fault to run the risk of undertaking to perform an impossibility, when he might have provided against it by his contract. And therefore, in such cases, the performance is not excused by the occurrence of an inevitable accident, or other contingency, although it was not foreseen by, or within the control of, the party. An application of this rule is furnished by *Cowley v. Davidson*, 13 Minn. 92 (Gil. 86). What is sometimes called an 'exception to the rule' is where the contract is implied to be made on the assumed continued existence of a particular person or thing, and the person or thing ceases to exist, as, where it is for personal service, and the person dies, or it is for repairs upon a particular ship or building, and the ship or building is destroyed."

*— : completion of contract: injunction against.*

A distinction is made between a duty created by law and one made by contract. In the former, the act of God will excuse. *School Dist. v. Dauchy*, 25 Conn. 530. And so with other matters of disability, not the fault of the contractor. *Davis v. Smith*, 15 Mo. 468. But not so when the duty is created by contract. In the first case just cited, the defendant agreed to complete and deliver a schoolhouse by the first Monday in May, 1854. Just before the time limited, the building, nearly completed, was destroyed by lightning. It was

McQuiddy v. Brannock.

held to be no excuse for nonperformance.   The court
said:

"There is no dispute as to the terms of the con-
tract, nor as to their import and force.   The defendant
did agree absolutely and unqualifiedly, that the build-
ing should and would be completed and ready to be
delivered to the plaintiffs by the first Monday of May
at the farthest.   This he has not done.   The building
has not been completed nor delivered, although it is
true he nearly finished it, and it is found could and
would have completed it, had it not been destroyed by
lightning.   In the contract he made no provision for
any contingency or event whatever, and the question
is, can he now incorporate into his contract a provision
for a contingency or a condition, or must he abide by
his positive and absolute undertaking.

"We believe the law is well settled, that if a
person promises absolutely, without exception or
qualification, that a certain thing shall be done by a
given time, or that a certain event shall take place,
and that the thing to be done or the event is neither
impossible nor unlawful, at the time of the promise, he
is bound by his promise, unless the performance,
before that time, becomes unlawful."

This rule of law was stated and applied in *Harrison
v. Railway*, 74 Mo. 364.   In *Gear v. Dray* (S. C.
Indiana, not yet reported) the trustees of a school closed
it by direction of the board of health because of the
prevalence of a contagious disease among the pupils.
The teacher brought suit for wages and recovered on
the agreement to pay her for the term.   The rule is
stated in substantially the same form as written in
Chitty's Contracts, *supra;* by 1 Keener, Cont. 102; 1
Beach, 217; Addison, 327.

2.   The rule as we thus apply it to injunctions,
would, of course, apply with equal force to the excuse

of bad weather. In *Cochran v. Railway*, 131 Mo. 607, a builder sought to excuse the nonperformance of his contract by evidence of bad weather. Of this, Judge BURGESS said: "The only way he could have protected himself against such contingency was to have done so by contract."

3. Another reason urged in favor of the contract as made and the validity of the tax bill is that such contract contemplated an extension of time by providing that the city engineer might, in his discretion, permit an extension, and hence (it is contended) the contract did provide for the contingency of an injunction, or bad weather. This point embraces the further contention that this part of the contract was authorized by what is termed a general improvement ordinance of Kansas City passed some years since and still in force, wherein it is provided that all contracts "shall specify the time within which the same shall be completed; and for failure on part of the contractor to complete his contract within the time so specified a fine or penalty of not less than $10 nor more than $25 per day, for each and every day after the expiration of the time so specified, shall be deducted by the city engineer from the amount of the estimate of such work due such contractor, said fines and penalties being claimed and deducted as damages for delay in the completion of any such work; *Provided, however*, that should any contingency arise in the prosecution of such work on any contract, by delay caused or ordered by the city engineer or other officer in charge, or by circumstances beyond the control of the contractor, an extension of the time of completion of such contract may be indorsed by the engineer upon said contract, giving

VOL. 70 app—35

his reasons therefor; and such indorsement shall remit the penalty claimed for the time so extended.''

The real question, on this head, therefore, is, can this general ordinance be allowed to have any application to the special ordinance and contract now in question in respect to the point under consideration. In the first place, defendant's counsel contend that the general ordinance is bereft of application to the special ordinance by a repealing clause in the latter in words as follows: "Section 4. All ordinances or parts of ordinances in conflict with this ordinance are, insomuch as they conflict with this ordinance, hereby repealed." It being argued that by the terms of the special ordinance the work was to be done in eighty days, while by the terms of the general ordinance the time was extended indefinitely, in the discretion of the city engineer. But we will pass by that question and consider whether the general ordinance can, within legal bounds, be made to apply to, or control, the present contract. We think that it can not. It is a clear delegation of a power conferred on and should be exercised by the city council. *Ruggles v. Collier*, 43 Mo. 353; *Thomas v. Boonville*, 61 Mo. 282; *Matthews v. Alexandria*, 68 Mo. 115; *St. Louis v. Clemens*, 52 Mo. 133; *Thompson v. Schemerhorn*, 2 Seld. 92; *Galbreath v. Newton*, 30 Mo. App., *supra.* Acts done by the city government must be done by the bodies, officers or agents named by the charter. *Nevada v. Eddy*, 123 Mo. 558. The matter of time is a legislative function which can not be left with the city engineer. The charter of the city provides that the city shall have power to improve the streets "at such time and to such extent, of such dimensions and with such materials, and in such manner and under such regulations as shall be provided by ordinance." Im-

*Note (margin): —: general v. special ordinance: delegation of authority: contract.*

provements are thus left, as to material and time in which they shall be made, to be provided for by ordinance. The charter no more authorizes the city council to permit the engineer to fix the time, or extend the time fixed by ordinance, than it would allow that body to permit the engineer to authorize a different material for street paving. What would be thought of an ordinance which prescribed asphaltum for street paving, and yet provided that the city engineer, if he saw fit, could change such material to brick or macadam? No one could defend an ordinance of that kind. And yet, the selection of material and the fixing of time in which the work shall be done are placed in the legislative power of the council in the same words and section of the charter.

We therefore hold it not to be within the power of the city council to delegate authority to the city engineer to alter the time prescribed by ordinance for the completion of the work. Besides the warrant of the charter for this holding there is, as was suggested in the original opinion, every sound reason in its favor. It scarcely needs to be mentioned that if a crowded business thoroughfare is to be improved or repaired, the very nature of the work suggests that time is of the first consideration. If the time fixed by the ordinance may be disregarded, in the discretion of the city engineer, a large part of the business interests of a city would be in the hands of that officer and a procrastinating contractor.

Our view is supported by authority in point. It being held that where the charter or statute provides that the time for doing the work shall be fixed by ordinance, the city engineer can not extend such time, and a contract undertaking to give him that power is void. *Brock v. Luning*, 89 Cal. 316; *Raisch v. San Francisco*, 80 Cal. 1; *Fanning v. Schammel*, 68 Cal.

428; *Daugherty v. Coffin*, 69 Cal. 454. In the case first cited, the time specified in the ordinance was twenty-five days and in the contract thirty days, and though the work was in fact done within the time limited by the ordinance, yet the contract was held void.

The general ordinance, therefore, having no influence on the disposition of the rights of the parties, leaves the question as to time to be considered from the standpoint of the contract as made and the special ordinance providing for the work and the time in which it should be done. Much that might well be said under this head we have necessarily written in the foregoing branches of the case. The ordinance prescribed a specific time. There is no pretense of compliance. Even to allow the excuses of injunctions and bad weather, would leave more than double the time limited by the ordinance. We can add but little to what has been already written. We have an ordinance fixing a specified time for the completion of the work, and under which bidders are invited to compete for the work. This competition is imperative. It is prescribed by the charter. Sec. 12, p. 130, Chart. 1889. We have a contract made with one of the bidders on terms altogether different, and as it turned out highly favorable to him, which were not disclosed to other bidders. He is allowed the greater part of a year where others were bidding on the supposition that they were to have eighty days only. The supreme court of Indiana in the case of *Wickwire v. Elkhart*, 144 Ind. 305, said: "The purpose and object of the statute is manifest. It was designed to protect the interests of the property owner in securing the best results for the least expenditure and to spare municipal officers the embarrassment, if not the opportunity for corrupt action, of denying contracts to personal and political

*Marginal note:* —: contracts: street improvement: public letting: time.

friends whose proposals are not so favorable to the property owner as that of another. It is as clearly implied from the language and purpose of the statute as if distinctly written in words that the contract must be the result of the competition. In *Platter v. Board*, etc., 103 Ind. 360, it .was said: 'The provisions of a statute intended to prevent favoritism and insure fair competition upon equal terms to all who choose to compete in bidding, are enforced with a firm hand.' Was the contract in question the legitimate result of the . competition offered by the council? If the council could strike from the bid the objectionable features therein, a proposition we do not consider, it is difficult to see how the contract could be made upon a basis entirely different from that contemplated by the specifications and the form of bid supplied. It is, it seems to us, perfectly clear that all competitors were entitled to place their bids upon the basis upon which the contract was to be awarded and that to require bids upon one basis and award the contract upon another was, in practical effect, but to abandon all bids. * * * If the time within which the improvement should be completed was a material consideration in the contract, it was material in the bidding. The council regarded it as material as evidenced by the stipulation that the work should be completed by August 1, 1893. It is manifest that the time for performing the work was a material element to be considered by the bidders as affecting the price at which the work could be accomplished. The advantage of four months additional time was valuable to contractors who might be enabled to carry two or more pieces of work instead of devoting the best part of the season to a single improvement. That advantage might reasonably have affected favorably to the property owners the bids of all of the com-

petitors." And to the same effect is *Kneeland v. Furlong*, 20 Wis. 437.

4.   It is next urged that the contract and tax bill issued thereunder are valid for the reason that the contract was subsequently approved by the city council.

——: ——: ratification.

It is quite apparent that if that portion of the contract here in question was, for the reasons we have already set forth, void when made, then no subsequent approval could legalize it. *Ruggles v. Collier*, 43 Mo. 353, 367. As has already been stated the charter of Kansas City requires street improvement work to be publicly submitted to competitive bidders and the contract let to the best bidder. This is also the general policy of the state. This policy protects the property holder, destroys favoritism and renders corruption less easy. *Galbreath v. Newton*, 30 Mo. App. 393. It is equally apparent that if public work is to be submitted to public competition and the contract let to the best bidder on such submission, a substantially different contract from that proposed and bid on, can not be made. *Trenton v. Collier*, 68 Mo. App. 483; *People v. Board*, 43 N. Y. 227; *Galbreath v. Newton, supra.* If this could be done then, though the ordinance and public submission for bids called for one kind of material, a contractor could be favored with a contract for some less expensive material. So it can be clearly seen that if an ordinance approving a contract already let be allowed to make such contract valid, notwithstanding it substantially differed from the contract contemplated by the ordinance directing the improvement and that bid on, a contract may be enforced which was not contemplated when the proceedings were set on foot and adopted—a contract which has never been laid before competitive bidders. Such would be the effect in this case. The time demanded by the ordinance directing this work

was eighty days. On this basis bidders competed for the work. If these bidders had known that they would be allowed one hundred days in addition and that they would be relieved by the engineer of all penalty for the delay (as was done in this case) it would, in all probability, have materially affected their bids.

5. But it was suggested at the argument of this cause that the general ordinance, before referred to, in connection with the special ordinance providing for this work, was a fixing of the time by the city council. We will examine this suggestion a moment. The general ordinance (allowing it for the present to have application here) provided that all contracts should specify the time within which the work should be completed. It also provided that if the work was not completed within the time specified, a penalty of not less than $10 or more than $25 per day for each day beyond the time should be deducted by the city engineer from the amount due the contractor for the work. It further provided that should any delay be caused or ordered by the city engineer or other officer in charge, or by circumstances beyond the control of the contractor, an extension of the time of completion may be given by the engineer; which extension will remit all the penalty aforesaid. The special ordinance did, of course, definitely fix the time at eighty days. But it is mere child's play to say that the time remains fixed, if we allow the general ordinance to have any force or application in this respect. The general ordinance plainly reads that the time shall be specified but that the city engineer may, in his discretion, name any other time. More than this, a mere reading of the ordinance discloses that this extension or different time may be had at the mere caprice of the engineer. The ordinance undoubtedly delegates to the city engineer a legislative

*—: —: ratification changing time.*

power conferred upon the city council. It is as clear an act of delegating legislative power to a ministerial officer as if the ordinance had read that "all contracts for paving streets shall provide for certain specified material, which material shall be used, *unless some other kind* is substituted by the city engineer."

6. The remaining position taken by plaintiff in favor of the validity of the tax bill, is that he should, at least, be allowed to recover on a *quantum meruit.* In support of this we are cited to section 18, page 90, of the city charter of 1889, which provides that: "* * *. Every tax bill shall, in any suit thereon, be *prima facie* evidence of the validity of the bill, of the doing of the work and of the furnishing of the material charged for, * * * provided, if it shall be pleaded and proved that the work for which the bill was issued was not done according to the terms of the contract made by the contractor with the city, then the plaintiff or plaintiffs shall recover thereon only the actual value of the work done, if of any value, and if of no value, the judgment shall be for the defendant."

By calling this provision of the charter to his aid, plaintiff must concede, for that purpose, that the provision in the contract for an extension of time was unauthorized, and that the contract must be regarded as though that provision had not been inserted. The contention then is that in not doing the work in the eighty days specified, plaintiff did not do the work (to use the language of the charter), "according to the terms of the contract." The conclusion is therefore drawn, that under the terms of the charter in such case, this plaintiff has a right to recover the value of the work, notwithstanding he did not complete it within the time he agreed.

We held in *Galbreath v. Newton*, 30 Mo. App. 399,

that in a suit on a special tax bill there could be no recovery on a *quantum meruit*. That case did not arise under a charter having the extraordinary provision which we have quoted from the charter of Kansas City. But the provision is not so broad as counsel would have us construe it. That provision can not make valid an invalid contract. It was only intended to permit a recovery of the value of the work which had been done under a valid contract. The provision contemplates a valid contract. It is not pretended that the work here in controversy was done under any other contract than that which we have held to be invalid and unauthorized. Therefore there can be no recovery for any sum. If there could be it would follow that no necessity would exist for a contract at all.

Besides we are not inclined to think that the provision was ever intended to permit a recovery on a *quantum meruit* where, though the contract was valid, it had been wholly ignored in performance; as, for instance, if the contract had been for asphaltum street paving, and macadam had been substituted; or, if the contract had been for the best stone sidewalk flagging, and pine boards had been used in performance. While the language is broad, yet we must keep in view that the object of the charter law is to protect the rights of the property owner as well as to advance public improvements. We can not indulge in any other presumption. The most inferior paving for street or sidewalk might be better than nothing and consequently be of *some* value, yet shall it be said that property owners shall have no voice in the matter —that though the contract is made for what they want and what the city council directs, yet the contractor may substitute what he likes, knowing that payment can be forced for what it is worth?

But there is yet another consideration which disposes of the question adversely to plaintiff's contention. This provision was not intended to disable parties from making any contract they may wish which is not prohibited by law. Granting the right, in a proper case, to recover on a *quantum meruit*, there is nothing in this charter provision to prevent a party from so fashioning his contract that he can not do so. So if the contract in question had been in compliance with the ordinance providing for this work and contained only the eighty days limit, it would have been plaintiff's contract whereby he agreed that if he did not perform within that time there was no performance. Time was made the essence of the contract, and no provision of the charter prevents parties from making it so. So our conclusion is that the charter does not prevent, and was not intended to prevent the property owner, in a proper case; from "going to the very foundation of the plaintiff's cause of action with the design to wholly defeat it." *Bank v. Payne*, 31 Mo. App. 521; *Meyer v. Wright*, 19 Mo. App. 283. GILL, J., concurring, the motion is overruled.