### J. R. CHILDERS, Respondent, v. JAMES T. HOLMES et al., Appellants.

Kansas City Court of Appeals, June 2, 1902.

1. **Taxbills: COMPLETION OF CONTRACT: CURBING.** Where a contractor fails to put in curbing, within the time specified in his contract, the taxbills issued for the work are void.

2. ———: **EXTENDING TIME: CITY ENGINEER: DELEGATION OF AUTHORITY: HINDERING PERFORMANCE.** A city council can not delegate to the city engineer power to extend the time for completing a contract for a street improvement; and on the record in this cause there is no evidence that the performance was prevented by the city engineer.

3. ———: **PERFORMANCE OF CONTRACT: PUBLIC AND PRIVATE CONTRACT COVERING SAME WORK.** A contractor agreed with a property-owner to put in certain curbing, and subsequently took a contract from the city at a higher figure to put in certain curbing including the same work covered in the private contract. The portion covered by the private contract was completed after the time limited in the public contract. *Held*, that this fact did not serve to excuse the performance of the whole work within the time required by the public contract.

4. ——: PUBLIC AND PRIVATE CONTRACT COVERING SAME WORK. Where a public contract for certain curbing covered work which the contractor had taken at a less figure from the property-owner, the taxbills issued under the public contract are void.

5. ——: PUBLIC AND PRIVATE CONTRACTS: "STRAW" CON-TRACTOR. Whether a city charter permitted a portion of certain curbing to be done by private contract and the rest under a public contract, and whether a contract is illegal when the contractor is a "straw" man and the surety the real contractor, quaere.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED.

*Gage, Ladd & Small* for appellants.

(1) The contract was not executed by the contractor and guaranteed by two or more sureties, Rowland, one of the two sureties thereon, being the actual contractor. City Charter, sec. 20, art. 9. (2) The work was not completed within the time required by the contract. City of Springfield v. Davis, 80 Mo. App. 574. When no time is fixed by ordinance, a reasonable time is implied. Ayers v. Schmohl, 86 Mo. App. 349; McQuiddy v. Brannock, 70 Mo. App. 535. (3) The time could not have been extended even by ordinance under such circumstances. Neill v. Gates, 152 Mo. 585; Ayers v. Schmohl, 86 Mo. App. 349; McQuiddy v. Brannock, 70 Mo. App. 535; Rose v. Trestrail, 62 Mo. App. 352; Whittemore v. Sills, 76 Mo. App. 248; Trust Co. v. James, 77 Mo. App. 616. (4) The city engineer could not extend the time to complete the work, under any circumstances. Neill v. Gates, 152 Mo. 585; Ayers v. Schmohl, 86 Mo. App. 349; McQuiddy v. Brannock, 70 Mo. App. 535; St. Louis v. Clemens, 43 Mo. 395; Ruggles v. Collier, 43 Mo. 353; St. Louis v. Russell, 116 Mo. 248. (5) The courts protect the property-owners from just such men as Rowland. His acts

were frauds on the property-owners, and the taxbills issued under such circumstances, and as these were issued, are void. Trenton v. Collier, 68 Mo. App. 483; McQuiddy v. Brannock, 70 Mo. App. 535; Kutchin et al. v. Engelbret, 62 Pac. 214. (6) The contract with the city must include all curbing not actually put in by the property-owners at the end of the time given them to put in curbing in front of their property. Trenton v. Collier, 68 Mo. App. 483; Galbreath v. Newton, 30 Mo. App. 380; People v. Board of Improvement, 43 N. Y. 227; City of Stockton v. Whittemore, 50 Cal. 554; McBean v. Redick, 96 Cal. 191; s. c., 31 Pac. 7; Warren v. Chandos, 115 Cal. 382; s. c., 47 Pac. 132; Kutchin v. Engelbret, 62 Pac. 214; Construction Co. v. Loevy, 64 Mo. App. 430; Cooley on Taxation, p. 656, note 3; City v. Lambert, 14 Bush 24.

ELLISON, J.—This is an action on two special taxbills issued for putting in curbing on one of the streets of Kansas City. The plaintiff is assignee of the contractor and obtained judgment in the trial court.

The facts necessary to an understanding of the case are that on the twenty-third day of November, 1895, an ordinance was passed by the council of Kansas City providing for the work. The ordinance provided that the curbing was deemed necessary to be done by the council; and that all of the curbing not done by owners of the property liable to be charged should be paid for by special taxbills. It further provided for notice by advertisement to the owners of the property to put in the curbing within thirty days of the first day of publication, and after the expiration of the thirty days the city engineer should give ten days' notice of a public letting of the work not put in by the owners. None of the work was done by the owners within said thirty days' period, and thereafter, on February 25, 1896, the entire work was contracted to J. A. Elliott at forty-five and three-fourths cents per lineal foot in

pursuance of a letting to him after proper notice. He gave bond as required by law with T. L. Rowland and James G. Minear as sureties for the faithful performance of the contract. The contract provided that the work should be completed within one hundred days. On the fourth of March, 1896, the city council passed an ordinance confirming said contract. The one hundred days limited to do the work expired in the month of June thereafter; and the work not being then completed, the city council, on July 29, 1896, passed an ordinance extending the time in which to complete it for forty-five days. The curbing was to be upon both sides of Fifteenth street from Virginia avenue to the eastern city limits. A material portion of this work thus contracted to Elliott by the city (that fronting the property of Foster) was not done under the contract. It was done by Elliott for Foster under a private contract at a less price per foot than his bid for the whole work, and which he had secured from Foster before he bid in and contracted the work from the city. The contract with the city contained provisions in regard to forfeiture of ten dollars per day if the work was not completed in the time agreed, and of the right of the city engineer to stop work or extend the time thereunder. And that if it was not begun in ten days after the contract was binding and prosecuted uninterruptedly with sufficient force to complete it within the one hundred days, that the contractor would forfeit six hundred dollars, etc. Similar provisions were discussed in McQuiddy v. Brannock, 70 Mo. App. 535, and need not be further noticed.

The trial court refused a demurrer to the evidence, and refused instructions declaring that the private contract with Foster avoided the taxbills. It likewise refused an instruction declaring that if the work was not completed within the one hundred days limited by the contract, the bills were void. And an instruction that

if the work was not done within the time as extended forty-five days, the bills were void.

1.   From the foregoing statement it will be observed that the ordinance providing for the work did not prescribe a specific time in which it should be done. That the contract did prescribe the specific time of one hundred days, and that the contract was confirmed by ordinance.   This state of facts fixed the time at one hundred days.   Ayers v. Schmohl, 86 Mo. App. 349. It may be conceded in plaintiff's behalf (without deciding) that the time was properly extended by ordinance for forty-five days.   If, therefore, the fact be that the work was not completed within that time, the bills are void and the judgment should have been for the defendant.   Barber Asphalt Co. v. Ridge, 169 Mo. —; Neill v. Gates, 152 Mo. 585; McQuiddy v. Brannock, 70 Mo. App. 535; Rose v. Trestrail, 62 Mo. App. 352; Whittemore v. Sills, 76 Mo. App. 248; Trust Co. v. James, 77 Mo. App. 616; Winfrey v. Linger, 89 Mo. App. 159; City of Springfield v. Davis, 80 Mo. App. 574.   An examination of the record discloses that the work contracted for was not completed until several months after the expiration of the time, counting in the extension aforesaid.

There is much urged by plaintiff as to the city engineer having either extended the time, or by his conduct so hindered the contractor that he could not complete the work within the time limited.   It has been frequently decided in taxbill and kindred cases, under charters similar to the one now being considered, that the power of extending time could not be delegated to the city engineer.   Neill v. Gates, 152 Mo. 585; McQuiddy v. Brannock, 70 Mo. App. 535; St. Louis v. Clemens, 43 Mo. 395; Ruggles v. Collier, 43 Mo. 353; St. Louis v. Russell, 116 Mo. 248.   As to any act of the city, through its engineer or other officer, preventing the contractor from completing the contract, we regard the case as showing an entire failure of evi-

dence. All time of interruption on the part of city officials may be excluded, and yet the work was not completed within the time-limit.

2. It is practically conceded that that portion of the work let to plaintiff, but which he performed under private contract with Foster, was not completed until the first part of December, 1896, and it is contended that though such portion was not completed in the time limited, yet that could not affect that part done under the public contract. That contention is not sound; it will not do to say that such part was taken from under the provisions of the contract with the city because done under private contract. The city and the property-owners are interested in the completion of the whole work, as originally publicly contracted for. If that portion of the work which is thus done under private contract can be delayed beyond the time agreed in the public contract, it is easily seen how a street might be left in an unfinished state indefinitely, and that public work could be placed beyond the control of the city.

3. But did not the private contract with Foster have the effect of avoiding these bills? We believe it did. It appears from what we stated at the outset, that an ordinance provided that notice by advertisement should be given the property-holders advising and authorizing them to do the work in front of their own property, and that at the expiration of that time the engineer should advertise for bidders on the work not elected to be done by the property-owners. In such case, whatever work is elected to be done privately by the owner should be omitted from the public bids and public letting. In this case Foster elected to do the work in front of his property by private contract with the same party who afterwards got the public contract. But instead of omitting such portion from the public bid and public letting, it was included and the whole was let as public work. This was both unjust and

illegal, as will appear from the following considerations.

The law is that the cost of the work must be apportioned among all the work, each piece of property bearing its proportion of the whole work and not the mere cost of the work in its immediate front. Neenan v. Smith, 50 Mo. 525; Smith v. Small, 50 Mo. App. 401. So that if, in apportioning the cost to the different pieces of property, one tract is omitted, it vitiates the whole, for the reason that the burden had not been fairly or legally distributed. City of Independence v. Gates, 110 Mo. 374; Leach v. Cargill, 60 Mo. 316; Diggins v. Brown, 76 Cal. 318; Rentz v. Detroit, 48 Mich. 544. Each property-holder pays the average price for the whole, regardless of whether that price is greater or less than would have been required for his property. In other words, each of the property-holders pays his proportion of the whole improvement, since it is the whole improvement that serves him. The property of a single owner may face on a portion of the street which will cost more to improve than the entire remainder. He is entitled to the average price as made up from the cost of the whole, as established by the public letting. Each property-holder in bad ground is entitled to the general reduction in price caused by the good ground. If, therefore, a part of this work, thus let, is done by private contract, that property escapes contribution to the general average and the remaining property is deprived of its aid in paying the average price. Thus, if a prospective bidder for the work, say two thousand feet, concludes that he can do it for $1,000, that should be fifty cents per foot for all owners. But suppose that instead of bidding fifty cents a foot to be paid by all, he takes one thousand feet at private contract for thirty cents per foot. That would be only $300 of the total of $1,000 which he has estimated he could do the whole work for; and it leaves $700 to be made out of

the remaining one thousand feet; that is to say, seventy cents per foot.    Thus the private contract has permitted one owner to escape twenty cents per foot of his proportion of the burden, and has placed that as an additional burden on the remainder.

We have not been cited to a case involving the exact point here presented, but we decided in Trenton v. Collier, 68 Mo. App. 483, that a contract could not be legally let for only a portion of the work ordered, and for which bids were invited.    See also People v. Board of Improvement, 43 N. Y. 227, and City of Independence v. Gates, 110 Mo. 374.

The advertisement for bidders in this case, the letting and the contract thereunder, indicated that the whole work contemplated by the ordinance was to be done under the public contract, when in point of fact it was let to a contractor, who at the time had a private contract for doing a large portion thereof.    It was a deception and had a tendency, in various ways, to injure the property-holders.    Kutchin v. Engelbret, 129 Cal. 635.

4. A point is made by defendant that there was no charter authority for the ordinance permitting a portion of the work to be done by private contract and that it would not, therefore, have been proper to do so in this case, even though such private work had been omitted from the public letting and public contract.    In the view we have taken of the case, it has not been necessary to examine the point.    It was also objected that this contract was illegal, since the contractor was what is termed a "straw man" and that one of the sureties on the bond was in reality the contractor. Since it was unnecessary, we have not considered that question.

Being satisfied that plaintiff has no footing upon which a recovery can possibly be had, we reverse the judgment.    All concur.