WEAR BROTHERS, Respondents, v. MARY A. SCHMEL-
ZER et al., Appellant.

Kansas City Court of Appeals, February 10, 1902.

1. Building Contract: SPECIFICATIONS: EXTRA WORK: HARD-
SHIP. Specifications of a building contract required all foundations to go down to the natural undisturbed earth and deeper than shown on the drawings if necessary to reach such foundation. The foundation was dug below the point shown in the drawings and the contractor charged therefor as extra work. *Held*, it was part of the work and material covered by the contract price and was not beyond or outside the contract and the contractor should have protected himself against such hardship by proper stipulation.

2. ———: CERTIFICATE FOR PAYMENTS: ISSUE OF. A building contract required the architect to issue to the contractor a certificate which should be an order on the owner to pay the contractor eighty-five per cent of the value of labor and material to a given date. The architect made such certificate but sent it to the owner who objected to certain allowance for certain work, whereupon the architect retained the certificate. *Held*, the certificate was not issued since there was no delivery to the contractor.

3. ———: PROMISE TO PAY EXTRA SUM: CONSIDERATION. A contractor made claim for a certain sum for extra work in the foundation for a barn. The owner promised to pay that sum and the contractor did the work and furnished the material, but the work was clearly provided for by the contract between the parties. *Held*, there was no consideration for the subsequent promise and the contractor could not recover the amount.

4. ———: VARYING TERMS BY PAROL: APPLICATION OF PAYMENT: JURY QUESTION. A building contract required the contractor to deposit one thousand dollars in the bank as a security for his performance. The owner paid him a certain twenty-five dollars and claimed it was not interest on the deposit but as to such the contract was silent. *Held*, the contractor could not vary the contract and show that at its making the understanding was that the owner should pay interest on the deposit; but if the owner in fact paid it as interest he could not afterwards have it applied on the contract price, and whether he so paid it was a question for the jury.

5. Mechanics' Liens: SUBCONTRACTOR'S JUDGMENT: CREDIT: CONTRACT STIPULATION. A building contract stipulated that if at any time there was evidence of any lien, etc., chargeable to the contractor, the owner could retain sufficient to indemnify him against the same. *Held*, when the contractor sued the owner the latter was entitled to a credit for the amount of the subcontractor's judgment enforcing a lien on the property.

6. Appellate Practice: SAME THEORY ABOVE AND BELOW. Where theory was not advanced at the trial it can not be considered on appeal.

Appeal from Jackson Circuit Court.—*Hon. James Gibson, Judge.*

Reversed and remanded.

*Karnes, New, Hall & Krauthoff* for appellants.

(1)   The court erred in submitting to the jury the construction of the written contract. Ford v. Dyer, 148 Mo. 523, 541; State to use v. Lefanire, 53 Mo. 470; Comfort v. Ballingal, 134 Mo. 281; Chapman v. Railroad, 114 Mo. 542; State to use v. Donnelly, 9 Mo. App. 520; Black River Lumber Co. v. Warner, 93 Mo. 374; Thorn, etc., Cement Co. v. Roofing Co., 77 Mo. App. 21; Hughbanks v. Insurance Co., 60 N. W. 640; 11 Encyc. of Pl. and Pr., 78, 81.   (2)   The excavation and stone work under the house, sued for by plaintiffs as extras, were not extras but were called for by the contract, and, therefore, were included in the consideration named therein.   Simon v. Lanius, 9 Ky. Law Rep. 59; Railroad v. Bradbury, 44 N. W. 1; Ashley v. Henahan, 47 N. E. 573; Leavitt v. Dover, 32 At. 156; Shipman v. District of Columbia, 18 Ct. Cl. 291; Stuart v. City of Cambridge, 125 Mass. 102.   (3)   The certificate made by the architect and mailed to Schmelzer did not render the owner liable for the amount mentioned therein.   The certificate was not delivered to plaintiffs, and when the architect's attention was called by Schmelzer to the provisions of the contract he concluded not to deliver the certificate for the reason that he had no power to determine the question.   Gray v. La Societi, etc., 635 Pac. 848; Ashley v. Henahan, 47 N. E. 573; Stuart v. Cambridge, 125 Mass. 102; O'Keefe v. Church, 59 Conn. 551, 22 At. 327.   (4)   The court should have instructed the jury to find against plaintiffs on item of alleged extra, $10.50, for work on stone piers under stable.   Schmelzer's promise to pay therefor was without consideration, and therefore null and void.   Lingenfeder v. Brewing Co., 103 Mo. 578.   (5)   The court erred in giving for plaintiffs their instruction number 7, in relation to the mechanic's lien, and in refusing to give instruction number 7 for defendants on same subject.   (6)   The court erred in refusing to instruct

the jury as requested for defendants in relation to the item of $25.

*Ashley, Gilbert & Dunn* for respondents.

(1) The instructions were proper as well as verdict for right party. Lynch v. Parish Lumber Co., 80 Texas 23; Mathews v. Danahy, 26 Mo. App. 660; Enterprise Soap Works v. Sayers, 55 Mo. App. 16; 11 Encyclopedia of Pleading and Practice, p. 84, and cases therein cited; Thompson on Trials, sec. 1020, and cases cited; Comfort v. Ballingal, 134 Mo. 281; Estes v. Fry, 22 Mo. App. 88. (2) The contract did not require plaintiffs to stand the cost of the additional foundation. Boteler v. Roy, 40 Mo. App. 234; 29 Am. and Eng. Encyc. Law, 871, and cases cited; Anderson v. Meislahn, 12 Daly, 149; Collins v. United States, 34 Ct. Cl. 294; Gas Light Co. v. St. Louis, 46 Mo. 121; Granite Co. v. Milling Co., 78 Mo. App. 622; Williams v. Railroad, 153 Mo. 534; Union Depot Co. v. Railroad, 141 Mo. 291; Shepard v. Plank Road Co., 27 Mo. 373; Blair v. Cosby, 37 Mo. 313. (3) The issuance of the certificate was final and conclusive on the parties. 1 Am. and Eng. Encyc., p. 823; Chapman v. Railroad, 140 Mo. 542; Mesner v. Lancaster Co., 23 Pa. St. 291; Arnold v. Bournique (Ill.), 20 L. R. A., p. 493; Gibson Co. v. Iron Co., 123 Ind. 364; Clinton Co. v. Hill, 122 Ind. 215; 29 Am. and Eng. Encyc. Law, 929, 940; Jones v. Jones, 17 L. J. Q. B. 170; Arnold v. Bournique, 144 Ill. 132; Gibson County v. Motherwell Co., 123 Ind. 364. (4) The $10.50 item for extra excavation and piers under the barn was certainly a proper charge and was by written direction of the architect and admitted by the defendant at the time. (5) It was entirely proper and approved practice for the court to make the credit of the Turner Brothers' judgment upon the judgment in this case, and not to allow the jury to deduct it from their verdict. Further-

more, the Turner judgment settled the question of these additional foundations constituting extras, for the reason that Wear sublet this portion of the contract to Turner under the original plans and specifications, and the same controversy arose between Turner and Wear, so that the Turner judgment, to which Schmelzer was a party, became *res adjudicata* upon this issue.   Dempsey v. Shawacker, 140 Mo. 680; McFall v. Dempsey, 43 Mo. App. 369; Oberbeck v. Mayer, 59 Mo. App. 289; Young v. Byrd, 124 Mo. 590; Wiggin v. St. Louis, 135 Mo. 558; Mason v. Summers, 24 Mo. App. 174; Case v. Gorton, 33 Mo. App. 597; Spradling v. Conway, 51 Mo. 51; St. Joseph v. Hax, 55 Mo. App. 293; Donnell v. Wright, 147 Mo. 639; State ex rel. v. Branch, 134 Mo. 502; Short v. Taylor, 137 Mo. 517; State ex rel. v. St. Louis, 145 Mo. 551; Haseltine v. Thrasher, 65 Mo. App. 334; Short v. Taylor, 137 Mo. 517; Offutt v. John, 8 Mo. 120; Garton v. Botts, 73 Mo. 274; Life Ins. Co. v. Smith, 117 Mo. 296. (6)   Defendants had no right to claim credit for the $25 check upon the construction account, and in any event, the finding of the jury on this point is conclusive.   Bishop on Contracts, secs. 82 and 89.

ELLISON, J.—This is an action to enforce a mechanic's lien for part of labor and material in a residence built for defendant by plaintiffs as contractors.   The judgment in the trial court was for plaintiffs.   The controversy between these parties does not reach the lien except as it may be affected by the correctness of the items of account in dispute.   These items are as follows:

Extra work on stone piers under barn...$ 10.50
Extra work on excavation under house ..   48.90
Extra work on foundation under house... 243.47

It was also claimed by defendants that plaintiffs failed to enter a credit of $25.

It is defendants' contention that the item for extra work on foundation and excavation under the house and barn were

included in the original contract price, as shown by the written contract between the parties. The facts as to the work for the foundation at the house and for the barn are different; we will consider them separately. The contract was that plaintiffs were to "provide all the materials and perform all the work mentioned in the specifications and shown on the drawings." Article 9 of the contract provided: "It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be nine thousand and six hundred dollars, subject to additions and deductions as hereinbefore provided."

The specifications referred to in the contract provided: "The contractor shall furnish all material, labor, transportation, scaffolding, etc., of every description required for the full performance of the work herein specified." They also specified that the contractor should, "excavate for the cellar footings, drains, etc., of the dimensions and of the depths as shown by the drawings, required by the grade and do any other excavating required, to fully carry out the work herein specified." They further provided as follows: "All foundations to go down to the natural and undisturbed earth and to extend deeper than shown on the drawings, if necessary to reach firm and solid foundation." The drawings showed a foundation of a specified depth, and the charges in this account, as extras, are for work and material below that depth. The specifications made the drawings a part thereof, and further specified: "Anything which is not shown on the drawings, but which is mentioned in the specifications, or vice versa, and anything not expressly set forth in either, but which is reasonably implied, shall be furnished and performed the same as though shown and mentioned in both." The case showed that when the foundation was excavated to the depth shown by the drawings, it was found necessary by the contractor and architect to go deeper in order to reach firm and solid ground, than was required in the specifications

as above set out. That in consequence the contractor did go deeper; doing the additional work and furnishing the additional material necessary therefor.

In our opinion the court should have, as a matter of law, instructed the jury, as asked by defendants' refused instruction No. 4, that the plaintiffs could not recover an account of the additional foundation work under the house. The terms of the contract are so clear on that head as to leave no doubt as to the meaning. The contractor was to do all the work and furnish all the material contemplated by the specifications and drawings. By the specifications quoted above, he was to sink the foundation to firm, natural and undisturbed earth, even though it should be necessary to go beyond the depth shown by the drawings. That was a part of the work and material covered by the contract price of $9,600, as above set out, which he was to receive for the building. It was as clearly provided for as any other part of the contract. Being provided for, it could not be an "extra." An extra in a building contract, is something beyond, or outside the provisions of the contract. It is something not provided for and, therefore, not covered by the compensation stipulated. It is no answer to this to say, as was argued by plaintiffs' counsel, that such additional excavation might have been in such character of ground as to have gone to a great depth and required a vast quantity of material and much labor. That is a condition which it must be supposed that plaintiff contemplated when he entered into the stipulations aforesaid. It is a situation which he might have provided against in the contract, and not having done so the courts can not now aid him by interpolating a stipulation which he omitted. This rule of law was applied to a contractor who was stopped at his work by injunction. McQuiddy v. Brannock, 70 Mo. App. 535, 542. It was applied to a contractor who agreed to finish a schoolhouse by a given time and it was destroyed by lightning when nearly complete. School District v. Donchy, 25 Conn.

530. And to an unavoidable accident which caused delay in a shipment of stock. Harrison v. Railroad, 74 Mo. 370.

The case of Stuart v. Cambridge, 125 Mass. 102, is much like that before us. In that case, as in this, the plans showed a foundation wall of certain depth, while the specifications provided that it should be that depth "and as much deeper as necessary to guarantee a firm and solid foundation." On reaching the depth shown in the plans the earth was found not to be solid and it became necessary to sink piles in order to secure a firm foundation. The court said: "By the fair construction of this contract the plaintiffs agreed to do all the work necessary to secure a firm foundation. They took the risk of its being necessary to drive piles in order to secure such foundation." To the same effect are similar cases from New Hampshire and Ohio. Leavitt v. Dover, 67 N. H. 94; Ashley v. Henehan, 56 Ohio St. 559, 570.

But plaintiffs say that the contract quoted above shows that the work must be shown in the specifications *and* the drawings, and that since the provision for going the additional depth is found in the specifications *but not* in the drawings, therefore, it was not such work as that provision of the contract covers. If we concede that the part of the contract aforesaid, taken alone, should read as thus contended, it would not avail plaintiffs, for the specifications adopted by the contract provide, as above set out, that if work is called for by the specifications and not shown in the drawings it shall be considered as called for by *both*.

The contract also provided that at thirty days after the commencement of the work, and every two weeks thereafter, the architect should "issue to the contractor a certificate which should be an order on the owner to pay the contractor" eighty-five per cent of the value of labor and material in the building. A certificate was written and signed by the archi-

Vol 92 app—21

tect for the work and material in controversy, but it was not delivered to the contractor. It was sent to the owner by mail, who afterwards returned it to the architect. That action came about in this way: one of plaintiffs called on the architect for the certificate for the work and material in controversy. The architect told him that he was too busy to attend to it then but would make it out and send to defendant. The defendant received it and returned it to the architect. The architect then having his attention called to the specifications did not deliver the certificate to plaintiffs because he did not consider that he should decide whether the work and material was extra as contended by plaintiffs and denied by the defendant. Under these facts, we hold that the certificate was not issued in the sense of the contract. The provision of the contract, that the architect shall "issue to the contractor" a certificate, means, that he shall deliver to him; and a delivery *to the opposite or antagonistic* party, is not a delivery in the sense of the contract. But aside from the question of delivery, the contract itself provided that "no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, . . ." So, therefore, though a certificate had been properly issued to plaintiffs, it not being a final certificate, did not conclude the defendant.

The parties, in their briefs, have treated the item of $10.50 for what is termed extra work and material for the barn, in the same way that they discussed the items just disposed of, except that in that the evidence tended to show that when a question was made as to that work defendant promised plaintiffs to pay that sum and thereupon plaintiffs did the work and furnished the material. So the difference between this item and those just disposed of consists in defendant's promise. Defendant now contends that the promise was without consideration and, therefore, he is not liable

thereon. The point made is that the work on the barn, like that on the foundation of the house, was plainly provided for in the contract and was to be paid for by the sum named in the contract for the entire work. That plaintiffs, if allowed to recover, would be getting double compensation. That the promise to pay them was a promise to pay for what they were already obligated to do. The item being based on work and material which plaintiffs were bound to do and to furnish under their original contract, without regard to the subsequent promise now relied upon, it is plain that the promise is without consideration and that it can not be the subject of an action. Lingenfelder v. Brewing Co., 103 Mo. 578. That case was where an architect had contracted to do the work of his profession in and about the building of a refrigerating plant for a brewing company. In the course of the construction he quit the work without legal cause, and the brewing company promised that if he would resume his work it would pay him an additional five per cent. The architect thereupon did resume his work and afterwards sued the company on the promise. Judge GANTT, speaking for the court, said of this: "What we hold is, that when a party merely does what he has already obligated himself to do, he can not demand an additional compensation therefor, and although by taking advantage of the necessities of his adversary he obtained a promise for more, the law will regard it as *nudum pactum*, and will not lend its process to aid the wrong."

There are cases where a party may in reality be bound by a contract to perform certain work, but where the situation is such, either from the ambiguity of expression, or other circumstances, the true meaning thereof is uncertain and in doubt. In such instances there may be an agreement in the nature of a compromise, which will be enforced. In such cases the uncertainty—the doubt—is a sufficient consideration for the new and certain promise. But we can not allow that principle here for the doubt and uncertainty in this contract,

taken as a whole, as we have already seen, does not exist. If we should allow it, we would but offer encouragement to refusals to fulfill plain contracts and to the exacting of unjust demands.

Defendant claims a credit of $25 as a payment which has not been allowed by plaintiffs. The payment is admitted, and it is admitted that it was not allowed as credit. Plaintiffs explain the matter in this way: They say that originally they were to give bond for the faithful performance of the contract but finding that difficult to do, the final agreement was that they would deposit $1,000 in a local bank as surety in place of a bond. That plaintiffs were to be allowed something by defendant by way of interest on the money deposited, and that the payment of $25 was on that account, and not on the building. The contract, as written, says nothing of this. It merely provides for the $1,000 surety deposit by plaintiffs. Undoubtedly plaintiffs would not be allowed to recover anything on the verbal contract as thus stated by them. It would be a clear violation of the rule of evidence to permit them to so vary and add to the written contract. But if defendant has paid it, though not legally bound to have done so, can he now claim to apply it as a payment in a different direction? We think not. He can not now no more be permitted to apply it as a payment on some other head, than he could be allowed to sue for and recover it in a distinct suit. The contract, however unenforcible at first, has become executed by payment.

"A mere promise of a thing to one is void for want of consideration, and words of present gift are only a promise. But when the promise is executed by delivery of the thing, the imperfection in the contract of gift is cured, and the thing can not be reclaimed." Bishop on Contracts, secs. 82, 89. So, therefore, whether defendant paid the item of $25 to the plaintiffs on account of the money deposit made by them, is a question of fact which was properly submitted to

the jury by defendant's instruction No. 11. Her peremptory instruction to allow it as a payment was properly refused.

The case shows that the work and material, which we have been discussing, was, in fact, done by subcontractors under plaintiffs and that they have filed and obtained a judgment enforcing a mechanic's lien against defendant's building for the sum they were to receive from plaintiffs. The court refused to direct the jury to allow this lien as a credit on plaintiffs' claim. The theory of the court was, as is shown by instructions for plaintiffs, that no credit should be allowed by the jury, but that the court would allow such credit when shown that defendant had paid the lien judgment. Under a provision of the contract this view was erroneous. It was stipulated that if at any time there was evidence of any lien, the account for which was made by, or, was chargeable to the contractor, the owner should have a right to *retain* an amount sufficient to indemnify him against such lien or claim. Thus it was defendant's clear right to have the amount of the lien, as long as it was unpaid by plaintiffs, deducted from plaintiffs' account. The result of the theory adopted at the trial, is to exactly reverse the provision of the contract and make the defendant first pay liens instead of the plaintiffs.

It is claimed by plaintiffs that the mechanic's lien judgment in favor of the Turner Bros. as subcontractors is *res adjudicata* on the question whether the foundation work and material in controversy was extra and outside the contract. It is sufficient to say of this, that no such theory was advanced at the trial. Plaintiffs did not introduce it in evidence and no instruction was asked by them on that head. No showing was made by plaintiffs which would enable us to consider the question, much less to say that their contention is well founded.

The judgment is reversed and the cause remanded. All concur.