[No. 5288.]
[No. 2920 C. A.]

## HENNESSEY V. FLEMING BROTHERS.

**Practice in Civil Actions—Contracts—Building—Specifications— Extra Work—Evidence.**

The specifications in a building contract provided that the foundations were to go to solid ground, that the cellars were to be seven feet high from the cement floor and that the ground removed from the excavation was to be graded around the houses. In an action for extras above the requirements of the contract, one of the plaintiffs admitted that the words "foundations to go to solid ground" were inserted at request of defendant over the protest of plaintiffs, but afterwards agreed to, and that it was known to both parties that the site, in part, was "made" ground. Held, that testimony to show the necessity of excavating more than seven feet in order to secure a solid foundation on account of the character of the ground, of using more brick in the foundation, of removing an increased amount of earth and rubbish, and of filling in with sand and gravel, was not admissible, since such work was covered by the specifications of the contract; but, it being shown that defendant requested the removal of certain rubbish from the premises, plaintiffs were entitled to show and recover the reasonable value thereof, since such request makes defendant liable on an implied promise to pay.—P. 29.

*Appeal from the District Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

Action by Fleming Brothers against William Hennessey. From a judgment for plaintiffs, defendant appeals.          *Reversed and remanded.*

Mr. GEORGE F. DUNKLEE (Mr. O. E. JACKSON, of counsel), for appellant.

Mr. C. C. BROWN, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Appellees entered into a written contract with appellant to build five two-story dwelling houses.

The complaint, setting forth in full the contract and the specifications which were embodied therein, was based upon three causes of action: 1st, a balance due upon the contract; 2nd, a bill of extras furnished over and above the requirements of the contract; 3rd, work and labor done for defendant at his request, upon his residence. The complaint alleged performance upon the part of plaintiffs of all precedent conditions contained in the contract upon their part to be performed. The contract price for the five dwelling houses was $9,591.00.

The answer admitted the making of the contract; denied that the same is correctly set out in the complaint; admitted the payments alleged; denied performance by plaintiffs; alleged damage by reason of inferior workmanship and material, and alleged a settlement between the parties, before suit. As to the third cause of action, the answer alleged that plaintiffs paid defendant in full settlement and discharge thereof.

A replication put in issue all the material new matter alleged in the answer. Trial to a jury resulted in a verdict and judgment in favor of plaintiffs against defendant in the sum of $1,240.00, to reverse which is this appeal. Numerous errors are assigned. A consideration of those based upon the admission of evidence hereinafter noticed necessitates a reversal of the judgment.

Portions of the specifications embodied in the contract material to a determination of this case are as follows:

"The ground to be excavated to a depth to make the cellars seven feet from the cement floor to the first floor joist. The ground removed from the excavation to be graded around the houses after the walls are up. * * * Foundations to go to solid ground.

\* \* \* The cellar to be cemented over the entire bottom, the cement to be laid on three inches of con-. crete well mixed with Louisville cement and well pounded down, the top coat to be mixed with B. & S. cement in proper proportions to make a strong job."

The foregoing specifications determine three things: 1st, that the foundations were to go to solid ground; 2nd, that the cellars were to be seven feet high from the cement floor, which was to be laid on three inches of concrete; 3rd, that the ground removed from the excavations was to be graded around the houses.

Over the objection of defendant, plaintiffs were allowed to introduce testimony to prove that, by reason of the character of the ground, it was necessary to excavate more than seven feet in depth to secure solid ground for the foundations; that such excavation necessitated the removal of an increased amount of earth and rubbish; that the foundation walls, by reason of such increased excavation, required the laying of more brick; that it was necessary for plaintiffs to fill in the enlarged excavation with sand and gravel in order to secure a foundation for the concrete floor to be laid in the cellars, and that the increased excavation necessitated the removal from the premises of an increased amount of earth and rubbish.

The testimony objected to showed, that the total amount claimed by plaintiffs on account of the increased excavation, the extra brick used in the foundations, and the filling of the cellars was $683.08; and that the amount claimed for the removal of extra earth and debris taken from the cellars was $150.00.

The evidence discloses that, after the excavation for the dwellings had been commenced, it was discovered that the site of the proposed buildings was an old dump which had been filled in with rubbish of various kinds.

One of the plaintiffs testified, that after this discovery was made, he talked the matter over with defendant and that defendant told him that the rubbish would have to be taken out; that witness told defendant that it would cost more than they figured on, but that defendant said it would have to come out at any rate. Upon cross-examination, this witness testified that he told defendant, at or about the time the contract was signed, that there might be some fill in there, because he had known of people hauling stuff in there from other jobs.

The testimony of this witness also shows, that the words "Foundations to go to solid ground" were inserted in the contract, at the request of defendant over the protest of plaintiffs, plaintiffs finally consenting thereto, and that at the time the contract was so amended, both parties knew that the site upon which the houses were to be built was, in part at least, made ground.

There is no claim that defendant agreed to pay any part of the alleged extras.

It is the contention of defendant that the extras claimed for increased excavation, increased material in the foundation walls, the filling in necessary to bring the cellar floors to within seven feet of the first floor joists, and the expense of removing the earth and rubbish taken from the enlarged excavation, should not be allowed, as all such work and material was provided for by the express terms of the contract. On the other hand, plaintiffs claim, that all such work and material was not contemplated by the contract, or the parties, at the time the same was entered into, and that such work and materials come clearly within the definition of extras, as the same is used in building contracts.

"The question of what constitutes extra work depends of course, as a general rule, upon the con-

struction of the working contract, and when the construction of an entire work is called for, at a fixed compensation, the hazards of the undertaking are assumed by the contractor and he cannot recover for increased cost, as extra work, upon discovering that he has made a mistake in his estimate of the cost, or that the work is more difficult and expensive than he anticipated."—30 Am. & Eng. Enc. Law (2d ed.) 1279.

The rule laid down in *Fitzgerald v. Walsh*, 107 Wis. 92-95, meets with the approval of counsel for both parties:

"It is well settled that where a builder is ordered to make changes from the original contract plans, which are really extras, or to do work in some way connected with the original contract but substantially independent of it, and the circumstances are such that the proprietor must know that the execution of such orders will cause extra labor and expense to the builder not contemplated by either party in the original contract, he is liable to compensate the builder therefor in the absence of some express provision in such original contract to the contrary."

Under the above definitions the work and materials now under consideration, except the removal of the rubbish, were not extras, for the reasons, that they were not caused by changes from the original contract plans and were not substantially or in any manner independent of such plans, but under plaintiffs' testimony must have been contemplated by both parties to the contract at the time the contract was entered into.

The words "Foundations to go to solid ground" are plain and unambiguous. They were inserted at the instance of defendant and over the protest of plaintiffs, with knowledge upon the part of both

parties that the nature and character of the ground might require increased excavation. The plaintiffs were afforded an opportunity to protect themselves from the assumption of the risk of an increased amount of excavation, increased brick work in the foundations, and the filling in, by inserting a clause in the contract which would protect them from such assumption. This they failed to do and thereby assumed the hazards of the undertaking.

In *Wear Bros. v. Schmelzer*, 92 Mo. App. 314, the specifications provided: "All foundations to go down to the natural and undisturbed earth and to extend deeper than shown on the drawings, if necessary to reach firm and solid foundation."

The testimony showed that it was found necessary to go deeper, in order to reach firm and solid ground, than was required in the specifications. The contractor sued for extra work on the excavation and on the foundation. The court said:

"In our opinion the court should have, as a matter of law, instructed the jury, as asked by defendant's refused instruction No. 4, that the plaintiffs could not recover an *(sic)* account of the additional foundation work under the house. The terms of the contract are so clear on that head as to leave no doubt as to the meaning. The contractor was to do all the work and furnish all the material contemplated by the specifications and drawings. By the specifications quoted above, he was to sink the foundation to firm, natural and undisturbed earth, even though it should be necessary to go beyond the depth shown by the drawings. That was a part of the work and material covered by the contract price of $9,600, as above set out, which he was to receive for the building. It was as clearly provided for as any other part of the contract. Being provided for, it could not be an extra. An extra in a building con-

tract, is something beyond or outside the provisions of the contract. It is something not provided for and, therefore, not covered by the compensation stipulated. It is no answer to this to say, as was argued by plaintiffs' counsel, that such additional excavation might have been in such character of ground as to have gone to a great depth and required a vast quantity of material and much labor. That is a condition which it must be supposed that plaintiff contemplated when he entered into the stipulations aforesaid. It is a situation which he might have provided against in the contract, and not having done so the courts cannot now aid him by interpolating a stipulation which he omitted.''

In *Stuart v. Cambridge,* 125 Mass. 102, the stipulation provided that the foundation should be of a certain depth ''and as much deeper as necessary to guarantee a firm and solid foundation.'' It became necessary to sink piles in order to secure a firm foundation. The court said:

''By the fair construction of this contract, the plaintiffs agreed to do all the work necessary to secure a solid foundation. They took the risk of its being necessary to drive piles in order to secure such foundation.''

To the same effect are *Levitt v. Dover,* 67 N. H. 94; *Ashley v. Hennehan,* 56 Ohio St. 559.

*Anderson v. Meislahn,* 12 Daly (N. Y.) 149, is relied upon by counsel for appellees in support of his contention that the work involved in sinking the foundation to a greater depth, and the increased excavation, is extra work within the terms of the contract under consideration. In the opinion of the court in that case there is nothing to indicate that the contract required the contractor to place the foundations upon solid ground, and for this reason the authority is not in point.

In the case at bar, the amounts claimed for extra work and material in the foundations, the increased excavation required on account of the character of the ground and the re-filling of the cellars to bring the bottom thereof to within seven feet of the joists of the first floor, are not extras, but are clearly within the requirements of the contract.

The admission of testimony in support of these items over the objection of defendant, was error, for which the judgment must be reversed.

With reference to the amount claimed as extra for removing from the premises the *rubbish,* which was taken from the excavation, we are of the opinion that the plaintiffs were entitled, under the terms of the contract, to be recompensed for the amount involved in removing the *rubbish,* for the reason that the specifications above quoted provide that the *ground* removed from the excavation was to be graded around the houses.

This is not a requirement that the *rubbish* taken from the excavation shall be graded around the houses, and the request of defendant that such rubbish should be removed from the premises implied a promise upon his part to pay the contractor the reasonable cost of such work.

For the reasons above stated, the judgment will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.                                    *Reversed.*

CHIEF JUSTICE STEELE and MR. JUSTICE CASWELL concurring.